SAVANNAH, FLORIDA & WESTERN RAILWAY COMPANY, APPELLANT, VS. GEO. W. TIEDEMAN & BRO., APPELLEES.

1. It is error for the court to submit a case to the jury for a finding on facts stated in the charge of the court but not put in evidence, and such a submission, under circumstances calculated to prejudice the opposite party, will cause a reversal of the judgment.

2. A plaintiff is confined in his recovery to the cause of action alleged in his declaration, and the court should not go outside of the issues raised by the pleadings in submitting the case to the jury.

Appeal from the Circuit Court for Suwannee county.

STATEMENT.

Appellees sued appellant for the value of a certain saw mill and fixtures, the property of the former, situated near the railroad track of the latter, and alleged to have been destroyed by fire, caused by the negligence of the company. The declaration contains two counts, in substance the same, in alleging a basis of liability on the part of the defendant company. After alleging that plaintiffs (appellees here) were the owners of a certain saw mill and fixtures situated in the

town of O'Brien, Suwannee county, Florida, near the railroad track of the defendant company, the declaration states that said company was the owner of "a line of railroad running through Suwannee county, State of Florida, and through the town of O'Brien, in said county, and was the operator of said line of road aforesaid, and in the operating of said line of railroad said defendant ran to and fro over and upon said line of railroad, through said town of O'Brien, divers railroad steam locomotives, engines and machinery, dangerous to persons and property, which said steam locomotives or engines were heated to great heat by the burning of large quantities of wood therein by said defendant in the production of steam as a locomotive power, and the said defendant, in and by the running, operating and firing one of its said steam engines or locomotives as aforesaid by its agents, servants and employes over its said line of railroad, on the 27th day of April, 1889, at and in the town of O'Brien aforesaid, did negligently, carelessly and recklessly permit, cause and allow sparks of fire to escape from said steam engine or locomotive, and did then and there negligently, carelessly and recklessly permit and allow sparks of fire to escape from said steam engine or locomotive, and did then and there negligently, carelessly and recklessly permit, cause and allow said sparks of fire, so allowed to escape from said steam engine or locomotive, to reach, to come in contact with and ignite and burn down, consume and destroy one steam saw mill complete, then and there situate, with all the machinery therein and thereto attached, of the value of $5,000, the property of the plaintiffs," to their damage $10,000.

The plea of the general issue was interposed, and

subsequently, another plea was filed, but ruled out on demurrer. The case was tried on the plea of the general issue, and a verdict and judgment for plaintiffs entered, from which an appeal was taken under statutes then permitting appeals in actions at law.

Omitting any reference to the testimony as to the ownership of the property in question and the estimates of its value, it appears that the mill was situated in the town of O'Brien, about twenty-five feet from the main track of the defendant railroad, and was destroyed by fire between 2 and 3 o'clock P. M., April 27, 1889. The mill was not operated at the time of the fire, and had not been for some time. A few minutes—not more than twenty, as fixed by the testimony—before the fire was discovered at the mill, a passenger train on the defendant's road went south, stopping some distance below the mill. There was east of the main track of the railroad a side track, and within two feet of it, further east, there was a wharf connected with the mill that was situated some fifteen or twenty feet further east. The whole of the property was on the right of way of the railroad company, and so conceded to be by plaintiffs. A witness for plaintiffs testified that he was seated about sixty yards from the mill, with no obstruction between, when the train approached it and passed on the main track; that it was very dry and very windy, the wind blowing from the south-west to the north-east, and that sparks blown from the passing locomotive would have gone in the direction of the mill. He was looking at the train as it approached the mill; and in answer to the question what was the condition of the locomotive when he first saw it, as to whether or not it was exhausting, said "no sir; when the train got up near the

switch, the north end of the side track, it kinder slacked for some purpose, or rather shut off, and then down near the mill, about the end of the switch, she seemed to tighten up," and exhausted a few times and went down to the station where it stopped.

From the diagram put in evidence by the plaintiffs, drawn by a party who testified that he was familiar with the surroundings, it appears that the mill property was situated about midway of the side track, and that the north end of it was some distance, as was the south end, from the mill, but the witness, in further stating that the exhausting was at the end of the side track, says it was right at the north end of the mill, and the exhausting was only about half a dozen times, and he supposed the train had gone during that time about thirty or thirty-five yards. Witness saw no smoke or indication of fire at the mill before the train arrived, but in a few minutes after it left, saw a small smoke about where the butting saw of the mill was situated. The smoke had the appearance or was about like that coming from a pipe or cigar, and did not attract his attention; but hearing some one say "fire," he looked towards the mill and saw the flames. The butting saw was located at the south end of the mill. There was another mill on the opposite side of the railroad, and a little south of the one that was burned, and it had a slab-pit with fire in it, situated about one hundred and fifty or two hundred feet distant. The owner of this mill testified for plaintiffs that he was in his store, some sixty yards away, when the alarm of fire was given, ran out of the store and saw a small fire. Before parties could get to it the fire flamed up and went into a bank of saw dust near where the butting saw was, which was at the south end of the mill.

The fire was about twenty-five or thirty feet from the main track of the railroad. This witness testified that a passenger train had gone south a few minutes—not more than twenty—before the fire was discovered, and the wind was blowing from the south-west. His testimony tended further to show that the fire did not originate from the slab-pit, as the fire therein was low, and the wind would not have carried sparks from it in the right direction to strike the mill that was destroyed. Another witness who was, or had been, a railroad engineer, testified that leaving out the escape of coals from an engine, the only other way of escape of sparks was from the smoke-stack.

Counsel for the defendant, among others, excepted to the following portions of the charge given by the court to the jury: 1. "In this case, if you should find from a preponderance of the evidence that the defendant did exercise all such reasonable care, diligence and skill to prevent injury by a fire to the property of the plaintiffs, that is all the law required, and the defendant was not guilty of carelessness or negligence; and although you may find from the evidence that the fire in question originated on defendant's right of way by reason of fire escaping from one of its engines, still, if you further find from the evidence that such engine was properly constructed and had the most approved appliances and inventions for preventing the escape of fire, and the defendant exercised all reasonable care, diligence and watchfulness to keep the same in repair, and from the evidence should further find that the defendant used all reasonable care and diligence to prevent combustible material from accumulating on and near the right of way where the fire originated, and also that the defendant's servants used all such rea-

sonable care and diligence, both in running and managing the engines, and in keeping the track clear to prevent fires, as careful and prudent men are accustomed to use under like circumstances, then you may and should find for the defendant." 2. "If you should find from the evidence that emission of sparks was such as is inconsistent with the common or known efficiency of approved spark arresters in general and properly used, then from these facts so proven, you may infer negligence against the defendant, and in such case the burden of proof is then upon the defendant to rebut this inference of law; the defendant may rebut this inference by showing affirmatively that at the time in question the engine was not dangerous to property on the line of road, and was properly constructed and equipped with approved appliances for preventing the escape of sparks and fire; that these appliances were all in good repair and condition as regards the escape of fire, or that all reasonable care and caution had been taken to keep them in such repair and condition, and that the engine was carefully and skillfully handled as regards the escape of fire therefrom." 3. "If from the preponderance of the evidence you should find that the defendant negligently and carelessly allowed combustible material to accumulate on its right of way, which was not covered by the property of the defendant, but contiguous to it, so as to unavoidably increase the hazard from fire, and that by reason of such accumulation of combustible material the fire was kindled and communicated to the mill of the plaintiffs, and should further find that the plaintiffs' own negligence in no manner contributed to the kindling or spread of the fire, then you should find for the plaintiffs."

The other facts in the case are stated in the opinion of the court.

*John E. Hartridge* and *B. B. Blackwell*, for Appellant.

*J. S. White*, for Appellee.

MABRY, J.:

Error is assigned on the ruling sustaining the demurrer of plaintiffs below to the second plea of the defendant, but we discover no error in this respect.

Where negligence is the basis of liability it must be alleged and proved before recovery can be had. Walsh vs. Western Ry. Co. of Florida, 34 Fla. 1, 15 South. Rep. 686. The rule announced in Jacksonvillle, T. & K. W. Ry. Co. vs. Peninsular Land T. & M. Co., 27 Fla. 1, 9 South. Rep. 661, is that the mere emission of sparks from a railroad locomotive, or the mere setting out of fires thereby, is not, *per se*, evidence of negligence upon the part of the company; but when the emission is of such character as is inconsistent with the common experience or the known efficiency of approved spark arresters in general use and properly used, it is evidence of negligence. The emission of sparks of unusual size, or both of unusual size and in unusual quantities, is evidence sufficient to raise the presumption of negligence and throw upon the company the burden of removing such presumption. The facts in the case referred to authorized the giving of a charge embodying the rules of law stated, but in the present case there is an entire absence of any proof as to the character or quantity of sparks emitted from the locomotive of appellant.

The portion of the charge excepted to, and which is numbered 2 in the statement of the case, announces views as to the presumption of negligence in harmony with the rule adopted in Jacksonville, T. & K. W. Ry. Co. vs. Peninsular Land T. & M. Co., *supra*, and if based upon sufficient facts would be sound. It is, however, error for the court to submit a case to the jury for a finding on facts not put in evidence, and if it is done under circumstances calculated to prejudice the opposite party the verdict will be set aside. This principle is illustrated in the case of Jacksonville Street Ry. Co. vs. Chappell, 21 Fla. 175, where the charge to the jury was that if they believed from the evidence that if apparent to the car driver that the plaintiff when he entered the car was in a crippled condition, having to use a cane or crutches to aid him in moving about, then it was the duty of the driver to use a greater degree of care than in case of an apparently well and sound passenger, and it was held to be error, there being no testimony showing that it was apparent to the driver that the plaintiff was a cripple or disabled. We are of opinion that it was error for the court to say to the jury that if they found from the evidence that emission of sparks was such as was inconsistent with the common or known efficiency of approved spark-arresters in general and properly used, they could infer negligence against the defendant, when no testimony was submitted as to an emission of sparks inconsistent with the common or known efficiency of approved spark-arresters in general and properly used. To this extent it is a charge on facts not proven, and was, therefore, not authorized. Again, in the portion of the charge referred to, the court, after telling the jury

they might infer negligence if they believed certain facts not proven, proceeded to say the defendant might rebut the inference of negligence by showing affirmatively that at the time the engine was not dangerous to property on the line of road and was properly constructed with approved appliances, and skillfully and carefully handled. We have been unable to find any authority to sanction the view that in order to rebut the presumption of negligence the company must show that its engine was not dangerous to property, and also that it was properly constructed with proper appliances, and skillfully and carefully handled. No authority that we have seen has gone to the extent of holding that it is the duty of railroad companies to try to construct and operate engines that will emit no sparks whatever. That feat has not yet been accomplished in the progress of mechanical development, so far as we know. The portion of the charge objected to was erroneous, and, of itself, necessitates a reversal of the judgment.

In the portions of the charge objected to, and indicated as numbers 1 and 3, in the statement, it will be seen that, in submitting to the jury the question of the company's negligence, the court has much to say about the duty of defendant, to use reasonable care and diligence to prevent combustible material from accumulating on and near the right of way of the railroad. There is no allegation in the declaration that the company negligently permitted combustible material to remain on its right of way, and by means thereof fire was communicated to the property of plaintiffs, but the averment, in effect, is that the company by its servants and agents so negligently managed and operated one of its engines as that sparks escaped therefrom

and come in contact with plaintiffs' property, and thereby destroyed it. A plaintiff is confined in his recovery to the cause of action alleged, and the court should not go outside of the issues in the pleadings in charging the jury. Jacksonville, T. & K. W. Ry. Co. vs. Neff, 28 Fla. 373, 9 South. Rep. 653; Wilkinson vs. Pensacola & Atlantic R. R. Co., 35 Fla. 82, 17 South. Rep. 71.

We entertain serious doubt as to the sufficiency of the evidence certified to us to sustain the verdict in this case, but the reversal is on the grounds stated above. The judgment will be reversed.