J. L. Frazee, *Plaintiff in Error,* v. W. H. Gillespie, *Defendant in Error.*

En Banc.

Opinion filed October 9, 1929.

Petition for rehearing denied December 10, 1929.

*George C. Bedell,* for Plaintiff in Error;

*Edgar W. Waybright* and *James Royall,* for Defendant in Error.

BROWN, J.—This writ of error brings up for review a judgment rendered by the Circuit Court for Duval County, by which the plaintiff, W. H. Gillespie, recovered against the defendant J. L. Frazee, damages for serious personal injuries received in an automobile collision on the water front at Atlantic Beach.

The case went to trial on two counts alleging that the defendant Frazee "carelessly and negligently drove and ran an automobile with great force and violence against and upon an automobile in which plaintiff was then and there riding." The second count differed only in that it alleged that "plaintiff was then and there riding as a passenger."

Issue was joined upon two pleas, the plea of the general issue, and a special plea, no doubt intended as a plea of contributory negligence, which alleged that the automobile in which plaintiff was riding was in his custody and control and was being driven by one Johnson at plaintiff's request; that plaintiff and Johnson were riding together on a joint

enterprise; that at the time and place of the accident said automobile was driven by Johnson sharply in front of the automobile of defendant in a negligent and careless manner so that though defendant made every effort to avoid a collision he was unable to do so; and that the negligent turning of said automobile by said Johnson was "the proximate cause" of the collision and damage. (Not that it "proximately contributed to causing" the collision and damage as is usually alleged in a simple plea of contributory negligence.)

The accident occurred at the point where the concrete approach westward to Atlantic Boulevard begins to rise from the level of the north and south driveway along the beach. It was on a Sunday afternoon. The incoming tide had narrowed the usually broad driveway on the smooth, hard sand of the beach to a width of about fifty or sixty feet.

The testimony of the witnesses for the plaintiff was in substance that plaintiff's car was one of quite a long line of cars proceeding leisurely northward on the east side of the center of the beach drive and turning westward, at the intersection above mentioned, crossing over to the left and ascending the concrete runway up to the boulevard leading to Jacksonville. That progress across to the runway was slow on account of the depth of the ruts which had been cut in the sand opposite the foot of the runway. That plaintiff's car was following a car about twenty feet ahead when the left turn to go up the runway was reached. That in making the turn plaintiff's car slowed down to six or eight miles per hour and the front wheels of plaintiff's car were within about three feet of the foot of the runway when plaintiff saw defendant's car bearing down directly and very rapidly upon them from the north, whereupon plaintiff exclaimed to the driver to go ahead, that they were about to be hit.

Johnson, the driver, looked to the right and saw defendant's car, abreast of and passing another car about 75 to 100 feet away, and coming very rapidly toward them, and putting on all the power he could, he succeeded in getting the car almost on the runway, but not entirely so, and defendant's car hit the right rear wheel of plaintiff's car with great violence, swinging it around so that it faced north, while defendant's car swung partially around and skidded some fifteen feet in the sand, the impact completely disabling both cars and seriously injuring plaintiff, whose head was cut and hip badly fractured. That defendant was coming down the beach at about fifty miles per hour, passing all other cars, and that from the time plaintiff first saw him, although plaintiff waved his hand and gesticulated wildly toward him, defendant came straight on at the same high speed, and would have hit plaintiff's car in the center had not the driver promptly speeded up as soon as they saw him. That plaintiff's wife, who was riding on the front seat with the driver, was by the force of the impact thrown through the window and clear of the car, while a Mr. Adkins who was riding with plaintiff on the rear seat, was also thrown through a window; whereas the plaintiff, who held firmly to the coat rod on the rear of the front seat, remained in the car, but was thrown violently against the side of the car, and sustained far more serious injuries than those who were thrown out.

On the other hand, the defendant testified that there was no great amount of traffic on the beach at the time; that he was driving south at a moderate rate of speed, passing one slowly moving car some distance back north from the runway; that his car was an old Marmon roadster, out of condition, and would not run over thirty-five or forty miles per hour. That as he approached the runway he saw a car coming up the beach on the water side, and others beyond

it, but leaving him ample room to pass, and that, as he neared the runway, he was looking closely at it to see if any cars were coming down it from the direction of Jacksonville, from which direction most of the cars were coming, which was to be expected on Sunday afternoons, and that he did not see plaintiff's car until he was within twenty feet of it and did not know how on earth it got there. That as soon as he saw it, he swerved his car to the left as quickly as possible in an effort to avoid hitting it, but in spite of all he could do his right front wheel struck the right rear wheel of plaintiff's car. That he, the defendant, was himself badly stunned for some seconds. That he came down a runway near the Atlantic Beach Hotel some little distance north of the place where the collision occurred, passed a slowly moving car, and continuing on south toward the runway up to Atlantic Boulevard, he passed no other cars which were moving south on the land side of the beach driveway except the one mentioned above, and that if he passed any at all they were entirely out of his way on the ocean side of the driveway.

There was some testimony, though not very convincing, by plaintiff's witnesses to the effect that defendant after the collision appeared to have been under the influence of intoxicants. This defendant denied. The shock of the collision, and the excitement following, could very well have accounted for what the testimony showed as to the appearance and conduct of the defendant immediately after the accident.

The evidence for plaintiff also showed that in going northward up the beach plaintiff's car was proceeding just to the east, or on the water side, of the center line of the fifty or sixty foot driveway between the "water lap" on the right and the area of soft dry sand on the left, leaving about twenty-five or thirty feet between the line plaintiff

was travelling and the foot of the runway. That just before getting opposite the foot of the runway, plaintiff's car, following another car about twenty feet ahead, curved around to the left, thus traveling probably thirty feet to the left across the space or passage way for southbound traffic before reaching the point where the runway to the westward began. Neither before or when making this turn, does it appear that any one in plaintiff's car made any signal to warn southbound traffic; nor did they see defendant's rapidly approaching car until they were within three feet of the runway. However as to the failure to give a proper signal before making the turn, it is very doubtful from defendant's testimony whether he would have seen it if given; and hence the causal connection between this negligence of plaintiff and the ensuing collision is doubtful.

If, as the evidence indicates, defendant's car was coming south at forty or fifty miles per hour, a rate of speed about five or six times as fast as plaintiff's car was travelling when making the turn, defendant's car was only about 150 feet away when plaintiff's car began to turn, and if plaintiff's driver had been carefully looking ahead, though there were several other cars also coming south, it seems very probable that there was nothing to have prevented the driver of plaintiff's car or the plaintiff himself from having seen defendant's car and noted its rapid approach in time to have stopped before attempting to cross over to the runway and thus getting in its line of travel. If the other cars coming down the beach did not obstruct the view, which point is not made quite clear by the evidence, and if the driver of plaintiff's car had been keeping a proper lookout before and when turning and driving across the line of southbound traffic, he could probably have seen defendant's car and have stopped in time to have allowed

it to pass, and thus have avoided the collision. It was his duty to do this if he could. But on account of the testimony as to other cars coming down the beach, which defendant was passing on the right hand side, and which might have obscured the view of defendant's car, we cannot say that the court clearly erred in refusing defendant's request for the affirmative instruction on the theory that plaintiff was chargable with contributory negligence, as a matter of law, upon the evidence submitted.

Even if plaintiff was guilty of negligence in thus carelessly turning to the left and then proceeding across the path of defendant's rapidly on-coming car, without keeping a proper lookout, the defendant, if he too had been properly observant of what was happening ahead of him, could have seen the dangerous predicament in which plaintiff's car had thus been placed in plenty of time to have avoided running into it if his car was not running at excessively high speed. But instead of this, according to his own testimony, he did not see plaintiff's car at all until he was within twenty feet of it, too late, in spite of all he could do, to avoid hitting it. Evidently, from his testimony, he must have been looking so intently at the runway to see if any cars were coming down it from the west that he failed to give due attention to cars that might be turning from the ocean drive way to ascend it. It might be said that this was a natural and easy mistake to make; that defendant's negligence consisted not in failing to look, but in looking to the right of the highway instead of both to the right and the left as well as straight ahead, and that a man cannot do all three of these things at the same instant of time.

There may be cases of suddenly appearing dangers where this theory might apply, but this is not one of them; and it is a doctrine which must be kept within narrow

limits if we are to have anything like safety upon our streets and highways with our present rapid means of locomotion. Swift as is the movement of the motor car, human sight and mental perceptions are far swifter. The glance of the driver's eye can shift from one side of the road to the other with lightning-like rapidity, and if the mental attention be not relaxed, and the steering gear and brakes be in good working order, the careful motor driver, exercising this comprehensive observation, can usually avoid all dangers of even heavy traffic on our streets and highways. But eternal vigilance is in these days the price of safety. And in the operation of automobiles, due care for the safety of life, limb and property, requires this constant and unrelaxing vigilance. What would have constituted "due care" in the days of horse and ox drawn vehicles would not meet the requirements of due care, or of "ordinary care," in the operation of such speedy, high-powered vehicles as our modern motor cars, if reasonable safety is to be attained.

If, as the defendant himself testified, he was not travelling at any excessive or rapid rate of speed, it must, we think, be conceded that he was, under the circumstances shown by the evidence, guilty of negligence in not perceiving the very slowly moving car of the plaintiff until he was so close to it that he could not avoid the collision. He should have been able to see it as soon as it turned to cross his line of travel, or so soon thereafter as to have enabled him to avoid it as it plowed slowly through the deep sand ruts. But, instead, on he came, according to the testimony for the plaintiff, without turning to the right or the left and without slackening his speed, until he was within twenty feet of it—too close to avoid running into it. Even if we admit the negligence of the plaintiff in turning to cross the path of the rapidly approaching car when it was

only 150 feet away, it would still be a serious question, under the testimony in this case, whether the subsequent negligence of the defendant, in driving rapidly on without observing the plaintiff's attempt to cross in front of him until too close to avoid the collision, intervened in such a way as to constitute the sole efficient proximate cause of the collision and consequent injuries. See in this connection Fla. Motor Transp. Co. v. Hillman, 87 Fla. 512, 101 So. R. 31.

The question as to whether the evidence showed contributory negligence on the part of the plaintiff as being a contributing proximate cause of the plaintiff's injury, is a very close one, but on the whole we conclude that the court was free from error in denying the motion of defendant for the affirmative instruction in his behalf, and also in denying that part of the motion for a new trial based upon this same contention. The question of proximate cause is frequently a jury question.

The second assignment of error is based upon the following charge given by the court at the request of the plaintiff:

"At the time of the accident in this case, there was in force in the State of Florida, a statute making it unlawful for any person, while in an intoxicated condition or under the influence of intoxicating liquors, to drive, operate, or cause to be driven, or operated, on or over the highways or streets or thoroughfares of the State of Florida, an automobile.

"If, therefore, you find from the preponderance of the evidence that at the time of the accident, the defendant was driving his automobile while in an intoxicated condition or under the influence of intoxicating liquors and that the fact he was driving or operating

the car while intoxicated or under the influence of intoxicating liquors was the sole proximate cause of the accident and the damage to the plaintiff flowing therefrom, you will find for the plaintiff.''

Aside from the dubious weight of the testimony on the subject of whether defendant was under the influence of intoxicating liquors, the charge made by the declaration was that the collision and damage was caused by *defendant's careless and negligent driving* of his automobile. Defendant's plea denied this. *On the issue thus made by the pleadings* the burden was upon the plaintiff to prove that defendant had as a matter of actual fact, operated his automobile carelessly and negligently, and that this had constituted the proximate cause of the collision and damage. The above charge was erroneous in that it departed from the issue made by the pleadings, and was calculated to cause the jury to believe that if they found from the evidence that the defendant was intoxicated or under the influence of intoxicants at the time, they could find for the plaintiff without regard to the question of whether the defendant had been guilty of actual negligence in the driving of his car or not. It is contended, however, that under the statutory provision the driving of an automobile while intoxicated or under the influence of intoxicants is negligence *per se,* or at least *prima facie* negligence, and that if injury is thereby proximately caused, a right of action arises. But there must have been actual negligence in the operation of the car, resulting from the intoxication or the influence of intoxicants, in order for the latter to have been the cause, or the cause of the cause, of the damage. Even if an automobile driver be under the influence of intoxicating liquors, or intoxicated—that is, in every day language, drunk,—yet if he happens at the time to be observing, even though unconsciously, the law of the road, and driving his

car properly, and a collision occurs without any fault or actual negligence whatever on his part, certainly there could be no recovery against him. In order then for there to be a causal connection between the intoxicated condition and the damage done, such intoxication must have manifested itself by actual negligence or wrongful act of some sort. Sheppard v. Johnson, (Ga.) 75 S. E. R. 348; Sylvester v. Gray, (Me.) 105 Atl. R. 815. It might be said that all this is implied by the language of the charge, which instructed the jury that the intoxicated condition must have been "the sole proximate cause" of the collision and damage, and that this could not have been the case unless said intoxicated condition caused the actual negligence, i. e., the careless operation of the automobile which caused the injury. The reply to this is, not only that this was not the issue made by the pleadings, but that in such case the actual negligent and careless operation of the automobile would itself be the *proximate cause* of the collision, and the intoxicated condition of the defendant merely the *predisposing* or *antecedent* cause. If it were permissible in such a case to go still further back in the line of causation, we might find the remote but original cause probably was the driver's appetite for intoxicants and his lack of self-control in their use. But actionable negligence must be *the proximate* cause of the injury complained of. For these reasons we should not follow the ruling in Wise v. Schneider, (Ala.) 88 So. R. 662, cited by defendant in error. We, therefore, conclude that such a charge was not strictly accurate under the issues made by the pleadings and was calculated to mislead and confuse the jury, and should not have been given. The charge, which was not modified or explained by any other instruction, proceeded on the theory that driving while intoxicated was negligence *per se*, not merely *prima* facie negligence.

The rule in this jurisdiction is that the instructions "must be confined to the issues made by the pleadings." J. T. & K. W. Ry. Co. v. Neff, 28 Fla. 373, 381, 9 So. R. 653; S. F. W. Ry. Co. v. Tiedeman, 39 Fla. 196, 22 So. R. 658.

We have a statute which makes the killing of a person "by the operation of a motor vehicle while intoxicated" a felony, regardless of the question of negligence. Cannon v. State, 91 Fla., 214, 107 So. R. 360. But such statute is not applicable here. In civil actions, negligence still remains the basis for the recovery of damages for personal injuries resulting from the operation of automobiles. In view of the fact that negligent and reckless conduct so frequently results from intoxication, or from being under the influence of intoxicating liquors, it was perfectly competent and relevant for the plaintiff, in support of his proof of the charge of negligence, to introduce evidence that the defendant was in such a condition at the time of the accident as usually results in negligent action. For a like reason, it was competent for the Legislature to make it unlawful for an automobile to be driven by a person in such a condition. But, under the present status of our laws, and certainly under the issue made by the pleadings in this case, in a civil action for damages based upon the alleged negligent operation of an automobile, the plaintiff cannot recover by merely proving that the driver was intoxicated. He must go further and prove actual negligence as the proximate cause of the damage, especially where, as here, the declaration is based on actual negligence and not on theoretical, or constructive, or statutory negligence. If a driver is really intoxicated, the plaintiff can usually find ample proof of actual negligence. But actual negligence still remains the basis of the civil action for damages, and should be both alleged and proven.

For the reasons above given, the writer of this opinion, with whom the Chief Justice and Mr. Justice WHITFIELD concur, consider that the giving of the instruction attacked by the second assignment of error constituted reversible error, but inasmuch as a majority of the Court, for the reasons stated in the separate opinion of Mr. Justice ELLIS and Mr. Justice STRUM, do not concur in this view, we will pass on to consider briefly the only remaining assignment of error which we deem it necessary to discuss.

The fifth assignment of error is based upon the court's refusal to give the following charge requested by the defendant:

"One of two automobiles approaching each other on the highway cannot lawfully make a left turn directly into the path of the other, though place of turning is intersection of highways which it reached first, unless the other is sufficiently far away to enable turning automobile to pass in the clear, or unless visible signal was given of intention to so turn in time to enable the other to avoid collision."

This charge is sustained by the holding in Webber v. Park Auto Transportation Co., 244 Pac. R. 718. While a somewhat similar instruction was given by the trial judge in his general charge to the jury, the instruction so given did not meet the situation as presented by the evidence in this case in that it was predicated upon the duty of an automobile driver intending to make a left turn when his car and the car coming from the opposite direction both reach the intersection "at the same time." Here, the plaintiff's car reached the intersection first, which makes some difference in the duty imposed. While this requested charge probably sets forth a correct general rule (unless perhaps where one car had the right of way over the other) we cannot hold

that its refusal in this case was reversible error, in view of the defendant's own testimony, which shows that if the signal before turning · had been made by plaintiff, it is extremely improbable that he would have seen it.

The judgment of the court below will therefore be affirmed.

Affirmed.

TERRELL, C. J., AND WHITFIELD, J., concur.

ELLIS, STRUM AND BUFORD, J. J., concur specially.

ELLIS, J., concurring:

I do not agree to the conclusion that the charge of the court criticised in the opinion was either a departure from the issues upon which the case was tried, or that it is susceptible to the construction that "driving of an automobile while intoxicated or under the influence of intoxicants is negligence *per se*."

The issues upon which the parties went to trial were: First, whether the defendant operated the automobile he was driving in a careless and negligent manner proximately causing the injury; second, was the driver of the plaintiff's automobile guilty of negligence which was the proximate cause of the accident.

Obviously the charge criticised did not affect the issues of contributory negligence, therefore it is in relation to the issue under the plea of not guilty that it should be discussed. The instruction referred to the statute denouncing the offense of driving an automobile on the streets and thoroughfares by any one who is in an intoxicated condition. That reference to the statute was not erroneous and there was some evidence sufficient to go to the jury that the defendant was intoxicated.

The second portion of the charge contained two propositions which the jury was required to find from the preponderance of the evidence to be established before a verdict could be rendered properly for the plaintiff because of the defendant's intoxication. Those propositions were: First, that the defendant was under the influence of intoxicating liquors while driving the automobile at the time of collision and second, that such fact was the sole proximate cause of the accident.

The driving of an automobile by a person under the influence of intoxicating liquors against the automobile of another cannot be the sole proximate cause of actionable injury to the other automobile or occupant without the element of negligence being present in the driver of the first vehicle. Whether the injury producing negligence was caused by intoxication of the driver is utterly immaterial. If negligence was caused by any condition the issue was sustained by the plaintiff.

I think therefore that the charge criticized was without error and the interpretation placed upon it unjustified by the language in which it was cast. The judgment should be affirmed.

STRUM, J., concurring specially:

While intoxication of the operator of an automobile is always a relevant fact bearing upon the question of negligence, it is generally held that in the absence of a statute prohibiting the operation of an automobile while intoxicated, the mere operation of an automobile while in that condition, standing alone, does not constitute actionable negligence, the reason being that if notwithstanding his intoxication the conduct of the driver measures up to the standard required by due care, intoxication alone, in the absence of acts constituting negligence in fact will not sup-

port the charge of negligence. In other words, in the absence of statute, voluntary intoxication is not negligence *per se*. Powell v. Berry, 89 So. E. R. 753; L. R. A. 1917A 306; Packard v. O'Niell, 262 Pac. R. 881; Berry on Automobiles, (6 Ed.) Secs. 167, 179.

When there exists, however, a statute expressly prohibiting the operation of an automobile while intoxicated and making such conduct a criminal misdemeanor many courts hold that a violation of the statute is negligence *per se*, even though the statute does not in terms declare such conduct actionable civil negligence. Wise v. Schneider (Ala.), 88 So. R. 662; Hudson v. State, 107 So. E. R. 94; Mitchell v. Churches, 206 Pac. R. 6; 36 A. L. R. 1132; Steinkrause v. Eckstein, 175 N. W. R. 988; Stewart v. Smith, 78 So. R. 724; 42 C. J. 898; 45 C. J. 714, et seq. 969; 20 R. C. L. 38.

In my opinion, where such a statute exists the operation of an automobile in violation thereof constitutes *prima facie*, but not conclusive, negligence for the purpose of determining civil liability, just as the violation of other statutory or municipal regulations constituting the "law of the road" is regarded as *prima facie* evidence of negligence. Such a statute is designed for the safety and protection of the public and its violation is *prima facie* evidence of negligence. See Hanson v. Kemmish, 208 N. W. R. 277, 45 A. L. R. 498; Berry on Automobiles (6th Ed.), Sec. 226. The driving of an automobile in violation of such a statute, standing alone and without an affirmative showing of negligence in fact, is *prima facie* negligent because it is an act which is expressly forbidden by statute and therefore contrary to the public policy of the State. The effect of such a statute is to declare that by the very fact of his intoxicated condition a person is incapacitated from acting as an ordinarily prudent person should act, and therefore,

as a matter of law he is at least *prima facie* guilty of negligence when he operates a vehicle in that condition. If the operation of such vehicle in the prohibited condition be the proximate cause of injury it is actionable. The negligence in such a case consists not of the mere fact of intoxication but of the *operation of the vehicle* contrary to a law designed for the safety and protection of other travellers and contrary to the public policy of the State as evidenced by the passage of the law.

In the Georgia case of Powell v. Berry, *supra,* holding that mere intoxication in a person driving an automobile does not constitute actionable negligence *per se* in the absence of a showing of negligence in fact, there was apparently no statute prohibiting drunken driving. That case recognizes the rule, however, that if there is such a statute its violation constitutes actionable negligence.

Of course the rule that the driving of an automobile while intoxicated in violation of a statute prohibiting such conduct constitutes *prima facie* negligence does not abrogate or impair the doctrine of proximate cause. The negligence which consists of the operation of the vehicle in the prohibited condition must be the proximate cause of the injury complained of. Since the operation of the automobile in the prohibited condition, standing alone, is merely *prima facie* evidence of negligence, the defendant may show that notwithstanding his intoxication he exercised due care and was not in fact negligent. The burden of showing the latter facts, however, would be upon the defendant, and in the absence of such a showing, the plaintiff's *prima facie* showing of negligence consisting of a violation of the statute would stand. A conflict on the question would be for the jury to determine.

Sec. 7749, Comp. Gen Laws 1927, provides that it shall be unlawful for any person while in an intoxicated condition

or under the influence of intoxicating liquors to such an extent as to deprive him of full possession of his normal faculties, to drive or operate an automobile over the highways of this State. Since there is some, though very slight, evidence that the defendant was intoxicated, which would be a violation of the statute and would *prima facie* constitute negligence and since the charge of the court embraced the proposition that the jury, before it could find for the plaintiff, must find from the preponderance of the evidence, not only that the defendant was driving the automobile while in an intoxicated condition or under the influence of intoxicating liquors, but also that the fact that the defendant was driving or operating the automobile while under the influence of intoxicating liquors was the sole proximate cause of the accident and the damage to the plaintiff flowing therefrom, the giving of the charge was without error. Taken in connection with the court's general charge upon the burden of proof and defining proximate cause, the charge complained of was not misleading.

I am, therefore, of the opinion that the judgment should be affirmed. I concur in the opinion of Mr. Justice Brown except that portion thereof dealing with the correctness of the charge upon which my views are hereinabove discussed.

BUFORD, J., concurs.