HOBSON, Justice
(dissenting).
The unfortunate accident which gave rise to this litigation occurred in the Hills-borough County community called Coronet during the afternoon of February 16, 1951. Charles A. Burdette, who was the husband of Ruby Burdette, appellant herein, was fatally injured when the automobile which he was driving collided with a car owned and operated by Oliver W. Phillips, ap-pellee herein.
Appellant filed suit for the wrongful death of her husband. Appellee denied the negligence charged in the complaint and filed a plea of general contributory negligence on the part of the decedent, as well as one asserting contributory negligence specially in that Charles A. Burdette at the time and place complained of proximately contributed to his death by carelessly and negligently driving an automobile while he was drunk, intoxicated and incompetent to control the same.
After joinder of issue the case came on for trial before a jury. Subsequent to the introduction of all testimony by the respective parties litigant, the trial court, upon motion therefor, directed a verdict in favor of the defendant, Oliver W. Phillips. The propriety of this ruling is now challenged.
It is elementary that under existing circumstances we must consider the evidence in the light most favorable to the plaintiff in the trial court in determining whether the circuit judge erred in directing a verdict for the defendant. It is the contention of appellant that when so considered the conclusion is inescapable that the evidence is sufficient to support her position that the alleged “sudden emergency” which developed could have been avoided by Phillips had he exercised reasonable care and caution, and that Phillips “cannot shield himself behind an emergency created by his own negligence”. See Wells v. Shepard, 135 Ark. 466, 205 S.W. 806.
Immediately prior to the accident Charles A. Burdette was driving in a southerly direction on Springhead Road. He was driving at a speed of approximately 35 miles per hour and had just rounded a blind curve some 680 feet from the spot where the accident occurred, when he was first seen by Mr. Phillips. Burdette was driving on the wrong side of the road, which fact was observed by Phillips, who took his foot from the accelerator but did not then attempt to stop his car. At that time Phillips' car must have been more than 1,360 feet distant from the automobile operated by Burdette because the speed of Phillips’ car (about 50 miles per hour) was greater than that of Burdette’s.
Burdette drove on the east side of the road for a short distance, then turned back on the west side of the road (the side upon which, under the rules of the road, he should have been traveling) and then again drove over on the left side for a short distance, pulled back on the right side, and a third time went into the east, or his left, lane. Immediately before the impact he pulled back toward and partially into the proper, or right, lane. When Burdette was on the wrong side of the road the second time Phillips, according to his own testimony, started pulling his car to his left, and when Burdette turned back into the proper lane the last time, or attempted to do so, the collision occurred.
The conduct and condition of Burdette prior to the accident should be commented upon here. The witness Mack, proprietor of a store, testified that on the day of the accident Burdette had come into his store to buy some baby chicks, and had spent about half an hour there. Burdette had been interested in selecting some article as a present for his son, and Mack and Bur-dette had pored over the merchandise in a glass showcase for some time. In the course of this activity, Mack and Burdette had their “heads in the showcase looking *808 around trying to find some of the little articles. * * * ” Yet Mack smelled no alcohol on Burdette’s breath and Burdette acted “just like any normal man would act;” •About thirty to forty-five minutes after Bur-dette left Mack’s store, Mack heard the ambulance going out to pick up Burdette.
Mrs. Couch, the proprietress of a grocery store, in Plant City, testified that Burdette had come into her store on the day of the accident, that he had bought a box of crackers, and that he had remained chatting with her for about five to eight minutes, but that she had detected no alcohol on his breath, although she was sufficiently close to him to have done so, had Burdette been drinking. He acted and talked in a perfectly normal manner. About twenty minutes after he left the store, Mrs. Couch heard the ambulance going out to pick him up.
Apparently after leaving Mrs. Couch’s store, Burdette proceeded in the direction of Coronet. Several witnesses testified that Burdette, proceeding at a high rate of speed, struck a railroad track, which intersected the highway, with such force that his car was thrown out of control and he ran into a ditch at the side of the road, from which a tractor finally extricated him. Without a word to anyone, Burdette then drove off down the road. During the time Burdette’s car was being pulled from the ditch, Burdette, who remained in the car with the windows up, “looked abnormal”, was shocked or dazed, acted “peculiar”, or “acted like he was crazy”. Burdette drove off in first or second gear toward a blind curve which commenced about 150 yards from the ditch where he had been stuck. He drove with two wheels on the shoulder of the road for about 100 yards of this distance. He then got back on the road, rounded the curve, and within a short distance thereafter had become involved in the accident which killed him. The total road distance from the locus of the ditch accident to the locus of the fatal accident was only about 1/2 mile.
As previously stated, appellant is of the opinion that appellee was not entitled to the benefit of the “sudden emergency” rule and I agree that in the interests of highway safety the application of the “sudden emergency” doctrine must be kept within narrow limits. Frazee v. Gillespie, 98 Fla. 582, 124 So. 6. The learned trial judge apparently entertained the view that the “sudden emergency” doctrine should be invoked in appellee’s favor for he stated “ * * * this accident and the death of the dead man here, [were] brought about solely through the fault of the dead man and not through my negligence of the defendant. * * *” (Italics supplied.)
Appellee, through counsel, relies in great measure upon the case of Jacob v. Edwards, La.App., 171 So. 165, 166, which was apparently a non-jury case, and confidently states that it is “on all fours with defendant’s [appellee’s] theory in the instant case.” The factual situation therein was different from that of the present suit. One of the most important distinctions is that in the Jacob case plaintiff’s car was on the wrong side of the road continuously and plaintiff’s operation of the automobile gave to the defendant in that case no indication that plaintiff was in difficulty, had lost control of his car, or was intoxicated or for any reason oblivious to the danger which he by his conduct created. The defendant in that case had the right under thé law to' presume that the plaintiff would return to the proper side of the road (and remain there) before it was too late to do so to avoid a collision. Indeed the Louisana Court declared the primary question to be: “Did Jones [Burdette in this suit] drive his coupe along the east side of the highway as he approached the oncoming truck to within so short a distance therefrom that a collision was inevitable?” (Italics supplied.)
In the instant case decedent’s car was, according to testimony of Mrs. Crawford (a passenger in Phillips’ car), “kind of zigzagging”. Burdette’s action in driving from one side of the road to the other, as distinguished from continuing along the left, or wrong, side of the. road, indicated clearly to Phillips that something was radically wrong and that Burdette’s operation of his *809 motor vehicle created a dangerous situation for the driver and occupants of any other vehicle which might have been in the path of Burdette’s car.
Furthermore, Arant, defendant in the cited case from the Louisiana Court of Appeals, could not have turned off the road to his right because a culvert and deep ditch bordered the highway arid when he first saw Jones’ car it was only 450 feet distant. All other cases cited by appellee are distinguishable from the instant suit on the facts.
I am convinced that in this litigation the court should not have decided that Phillips could not (or that he could) have avoided the “sudden emergency” with which hé was ultimately confronted. I am of the view that the determination of this question was for the jury. Under the evidence the jury might have decided, had the case been submitted to it, that Phillips should have appreciated the danger of proceeding along the highway in sufficient time to have avoided the “sudden emergency” before it arose and that his dereliction constituted negligence.
It is patent from the record that there was at least a 6 foot shoulder upon the right side of the road all along the highway, and that for the last 275 feet which Phillips traversed, a 25 foot shelled parkway in front of Bell’s store and/or the width of a road leading off to the east, was available to him for use in departing from the highway, an action which the jury might well have determined would have been proper for him to have taken in the exercise of reasonable care and caution under existing conditions, rather than starting a turn toward his left the second, (not the last) time Burdette was on the wrong side <3f the road.
The jury might have concluded that at the time Phillips says he started pulling to his left he was not faced with a “sudden emergency” [certainly such emergency did not exist prior to that time] and consequently his action should have been judged by the rule which requires the exercise of reasonable care and caution instead of the less stringent rule applicable to one faced with a “sudden emergency”. I do not mean to say that the jury should, or that I believe it would, have so decided had the case.been submitted to it, but only that it might lawfully have done so, because from the moment Phillips admittedly started turning to his left until the instant of impact, sufficient time elapsed for Burdette to drive back into his right lane, then onto the wrong side of the road, and once again turn at least partially into his right lane. Moreover, after Phillips applied his brakes his car skidded at least 75 feet, and had travelled more than 680 feet since Phillips first observed Burdette (Phillips was admittedly driving faster than Burdette and was not consuming time “zigzagging”).
It would indeed be a travesty upon justice for this or any court to saddle liability upon another for one’s own accidental death brought about by voluntary intoxication, but I cannot agree as has been suggested that this was simply a case wherein an accident occurred solely from such cause. The evidence upon the question whether Burdette was drunk is conflicting and was therefore, under our system of trial by jury, a matter to be determined by such body. However, I am inclined to agree with Mr. Justice Barns that the determination of this question of fact would not necessarily decide the question of liability on the part of Phillips. Nevertheless, the jury’s determination of this question is essential to the proper decision of the query whether Burdette was guilty of contributory negligence which might bar recovery.
I cannot agree with Mr. Justice Barns’ conclusion that there was no question of fact which should have been resolved by the jury. It appears quite clear to me that this case should have been submitted to the jury for its determination of the question whether, under all the circumstances, PhilT lips was negligent in failing to exercise that degree of care and caution required of him by law to avoid the sudden emergency which ultimately developed, or to preclude the eventual existence of a situation which might bring into play the doctrine of the *810 last clear chance. If a jury should resolve the above query against Phillips, then his negligence thus established might be determined to have been the proximate cause of the accident which brought about Bur-dette’s death. We should not confuse causa sine qua non with proximate cause. In my opinion the learned circuit judge erred in holding, in effect if not specifically, that Phillips’ negligence, if any, was not actionable. Such negligence, if found by the jury, could have been relied upon by Bur-dette’s widow as her sole cause of action. But this is not to say that by so doing she eliminated a consideration of the defenses of sole negligence and contributory negligence, if proved. Here again we are faced with a jury question.
We have repeatedly held that the question of contributory negligence is ordinarily one for the jury after proper charges upon the law by the court. Upon a consideration of the testimony heretofore delineated, the jury may well have concluded that, although there was evidence that a partially empty whiskey bottle was found in Burdette’s car, that the odor of alcohol was either on his breath, [no witness saw him take a drink] person or about the car, and that he was “zigzagging”, he could not have become so intoxicated within a matter of 20 to 30 minutes or. less as to ascribe his “zigzagging” to intoxication. The jury may therefore have preferred to attribute Bur-dette’s erratic course to some mechanical defect of the- ancient automobile [1939 or 1940 model Ford] or to a semi-conscious or dazed condition not the result of alcohol, since it was stipulated that the doctor who was administering to Burdette when he died was of the opinion, and would have testified, that Burdette had “fainting spells or blackouts before the accident”.
If in fact Burdette was not drunk but suddenly became unconscious or “dazed from shock or something” without having had reason to suspect that such condition might develop, the law would not ascribe negligence or contributory negligence to him. See Cohen v. Petty, 62 App.D.C. 187, 65 F.2d 820; Holmes v. McNeil, 356 Mo. 846, 204 S.W.2d 303; Weldon Tool Co. v. Kelley, 81 Ohio App. 427, 76 N.E.2d 629; Lobert v. Pack, 337 Pa. 103, 9 A.2d 365; Wishone v. Yellow Cab Co., 20 Tenn.App. 229, 97 S.W.2d 452; Slattery v. Haley, 52 Ont.L.R. 95, 3 [1923] D.L.R. 156, 11 B.R.C. 1036.
Our system of trial by jury is by no means perfect, but it is the best method yet devised to assure a fair and impartial trial, and I cannot subscribe to the view, fraught as it is with minatory potentialities that such constitutional guarantee should be destroyed by judicial fiat. Moreover, it is my belief that in a case of this character when this court divides 4 — 3 on the question whether the case should have been submitted to the jury, such situation tends to prove, if indeed it does not firmly establish, my premise. In other words, when such question is so close that reasonable minds differ radically with reference to- its proper determination, the doubt should be resolved in favor of submission of the case to a jury. Particularly is this true when, as here, at least one member of the majority group concludes from his appraisal of the evidence that the doctrine of the last clear chance should be invoked in favor of. the appellee (defendant below) [1] and the minority feels that neither the “last clear chance” nor the “sudden emergency” rule should be applied until and unless the jury first decides whether Phillips was negligent in failing to use the degree of care and caution required of him in an attempt to preclude the existence of the situation which might 'have called for the application of either principle.
*811 It is my firm opinion that this is a case wherein a jury should determine first whether Burdette was solely negligent; second whether Phillips was guilty of negligence; and third, if the answers to these two questions make it necessary, whether Burdette was guilty of contributory negligence which would bar recovery. More specifically, the jury should determine the issues of fact and after having done so should decide the question whose negligence was the proximate cause of the accident in which Burdette lost his life.
In the recent case of Chambers v. Loftin, Fla., 67 So.2d 220, 222, in an opinion by Mr. Justice Sebring, this court reaffirmed the rule which was long ago adopted by it that “a verdict should not be directed in favor of the defendant unless ‘it is clear that there is no evidence whatever adduced that could in law support a verdict for plaintiff.’ Section 54.17, Florida Statutes 1951, F.S.A. Johnson v. Louisville & N. R. Co., 59 Fla. 305, 52 So. 195, 196; Bryan v. Loftin, Fla., 51 So.2d 724; Mullis v. City of Miami, Fla., 60 So.2d 174.” (Italics supplied.)
I would reverse this case for further proceedings not inconsistent with the view expressed herein.
TERRELL, Acting C. J., and THOMAS, J., concur.

. The doctrine as such cannot be properly invoked by a defendant. The last clear chance doctrine is classified as "humanitarian”. Such descriptive adjective is applied to it because the last clear chance doctrine developed as the result of an effort ’ to mollify the effect of the harsh, inexorable common law rule that contributory negligence on the part o.f a plaintiff bars recovery. The permitting of the invocation of the doctrine of the last clear chance by a defendant is the result of confusing such doctrine with the rule regarding contributory negligence.