340 So.2d 922 (1976)
Margaret W. INGRAM, Petitioner,
v.
Robert Leslie PETTIT, Jr., and the Liberty Mutual Insurance Company, an Insurance Corporation, Respondents.
No. 46679.
Supreme Court of Florida.
December 9, 1976.
*923 David R. Lewis, of Blalock, Holbrook, Lewis, Paul & Isaac, Jacksonville, for petitioner.
John C. Taylor, Jr., Marion R. Shepard and John E. Mathews, Jr., of Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, for respondents.

ON REHEARING GRANTED
ENGLAND, Justice.
Margaret Ingram was injured as a result of a rear end collision to her car, for which she sued Robert Pettit for compensatory and punitive damages. The trial judge removed the issue of punitive damages from the jury by granting Pettit a summary judgment. This judgment was affirmed by the First District Court of Appeal,[1] after which Ingram properly invoked our jurisdiction to review that decision.[2]
The sole issue presented for our review is whether a jury should be allowed to consider an award of punitive damages where negligence is coupled with intoxication. The record in this case indicates that Ingram's car was hit by Pettit from the rear while standing at an intersection in a well-lit area. Pettit's car had not been moving at an excessive rate of speed, and it had not been seen to swerve or veer outside the marked lines of traffic. In fact, except for conflicting evidence as to whether Pettit applied his brakes before his vehicle struck Ingram's, there was no indication that the operation of Pettit's car up to the time of the accident was other than normal. This accident is before us solely because Pettit submitted to a breathalizer test which showed his blood alcohol content to be .26% on a scale where the legal presumption of intoxication arises at .10%.[3]
Ingram claims that a jury should be allowed to consider an award of punitive damages, suggesting that a person who voluntarily intoxicates himself and then drives an automobile on the public highways of this state should be exposed to financial punishment. Her argument is based primarily upon decisions in other jurisdictions which have found voluntary intoxication to provide the willfulness necessary for an award of punitive damages.[4] Pettit contests this notion, suggesting that the cases relied upon by Ingram involve persons whose automobiles were being driven in a manifestly careless manner prior to the liability-generating accident. He suggests further that the law of this state permits an award of punitive damages only where there is willful conduct tantamount to criminal negligence.[5]
It has long been established that the availability of punitive damages is reserved to those kinds of cases where private injuries *924 partake of public wrongs.[6] The intentional infliction of harm, or a recklessness which is the result of an intentional act, authorize punishment which may deter future harm to the public by the particular party involved and by others acting similarly. Cases in this category may be likened, in general terms, to culpable negligence in criminal proceedings. The higher burden of proof in a criminal suit, however, prevents the comparison of results in similar factual situations as a means of resolving civil disputes. For this reason, Pettit's reliance upon Smith v. State, 65 So.2d 303 (Fla. 1953), is misplaced.
Our jurisprudence reflects a history of difficulty in dividing negligence into degrees.[7] The distinctions articulated in labeling particular conduct as "simple negligence", "culpable negligence", "gross negligence", and "willful and wanton misconduct" are best viewed as statements of public policy. These semantic refinements also serve a useful purpose in advising jurors of the factors to be considered in those situations where the lines are indistinct.[8] We would deceive ourselves, however, if we viewed these distinctions as finite legal categories and permitted the characterization alone to cloud the policies they were created to foster. Our guide is not to be found in the grammar, but rather in the policy of the state in regard to highway accidents. From that perspective, we see that the courts and the Legislature have evolved the notion that drunk drivers menace the public safety and are to be discouraged by punishment. The state's policy is supported by adequate current, factual data.[9] In line with that policy, therefore, we hold that juries may award punitive damages where voluntary intoxication is involved in an automotive accident in Florida without regard to external proof of carelessness or abnormal driving, provided always the traditional elements for punitive liability are proved, including proximate causation and an underlying award of compensatory damages. We do not hold that intoxication coupled with negligence will always justify an award of punitive damages. We affirmatively hold that the voluntary act of driving "while intoxicated" evinces, without more, a sufficiently reckless attitude for a jury to be asked to provide an award of punitive damages if it determines liability exists for compensatory damages. In this context the term "while intoxicated" means the same as it does in criminal proceedings. It is not synonymous with "while under the influence of intoxicating liquors." Cannon v. State, 91 Fla. 214, 107 So. 360 (1926). The term "intoxicated" is stronger than and includes the term "under the influence of intoxicating liquor." Taylor v. State, 46 So.2d 725 (Fla. 1950). As used in this opinion, the term "intoxicated" is identical to the degree of intoxication required in Section 860.01, Florida Statutes (1975), pertaining to automobile manslaughter.[10]
Florida courts have recognized that an automobile on the highway is a dangerous *925 instrumentality.[11] Its dangerous propensities are heightened when operated by a person who is, by definition, incapable of exercising vigilance and caution.
Judicial attempts to protect Florida citizens from drunk driving dangers have paralleled like efforts in the Legislature. Our Legislature has enacted progressively more harsh criminal laws directed at drunkenness.[12] Today it is illegal to drive an automobile in the State of Florida if blood alcohol content is.10% or more, regardless of proof as to the driver's carelessness.[13] Drinking to the point of intoxication is a voluntary act. Driving in an intoxicated condition is an intentional act which creates known risks to the public. We believe that the potentiality of an adverse award of punitive damages is a suitable corollary to those criminal laws designed to discourage this reckless disregard for the public safety.
The decision of the district court is quashed and the trial court is directed to submit the issue of punitive damages to a jury.
OVERTON, C.J., and ADKINS, BOYD and HATCHETT, JJ., concur.
SUNDBERG, J., dissents with an opinion.
*926 SUNDBERG, Justice (dissenting).
I must respectfully dissent from the majority opinion in this case. Today the majority has discarded literally hundreds of years of jurisprudence developed in the law of torts. Not only are the painstakingly developed concepts of "simple negligence", "gross negligence", "culpable negligence", "willful and wanton misconduct" spurned, but the bedrock concept of liability predicated on fault which has evolved carefully in the law of torts is dismissed. In cases where an accident involving an intoxicated driver is concerned, the injured party need only prove the accident, provide evidence of intoxication and, thereupon, the driver will be subject to assessment of punitive damages. This is strict liability, not only for compensatory damages, but for exemplary damages. The intoxicated driver becomes an insurer, to the full extent of punitive damages, irrespective of any showing that his conduct in the operation of the automobile fell below that standard of care which is expected of a reasonable, prudent man under similar circumstances. To quote, "... we hold that juries may award punitive damages where voluntary intoxication is involved in an automotive accident in Florida without regard to external proof of carelessness or abnormal driving ..." (emphasis supplied).
This extraordinary position is justified by the assertion that the Legislature has enacted progressively harsher criminal penalties for drunken driving. Such a trend by the Legislature, as pointed out in footnote 12 to the opinion, is obvious. It is the Legislature's prerogative, even duty, to respond on behalf of the public in Florida to known dangers inherent in operating an automobile while intoxicated, through the enactment of penal laws. Notwithstanding the concept that punitive damages in tort law are premised upon the idea of punishment as an example to others, the guiding principle in this area of law always has been that liability should be predicated upon fault. In an active and vibrant society accidents are bound to occur. The philosophical decision was long ago made, and I believe rightly, that to make one the insurer of any injury to another caused by him would inhibit the development and progress of that society. (A sure way to do nothing wrong is to do nothing at all.) Hence, there developed the principle that one should respond in damages for injury to another only in those instances where his or her conduct fails to measure up to the conduct expected of a reasonable, prudent person acting under similar circumstances. True, this concept has been tempered over the years with the advent of workmen's compensation and like programs for the benefit of employees who enjoy a disparate bargaining and economic position and most recently, to a limited extent, in the instance of no-fault insurance laws. But in each instance this has been accomplished through acts of the Legislature.
The majority opinion extends the strict liability concept to the recovery of punitive damages, but says that the traditional elements such as proximate causation and an underlying award of compensatory damages must still be proved. But what does this mean  that the accident caused injury or that the intoxication, without more, caused the accident to occur? If the latter, then the position is untenable in a situation such as we have at bar where there is no evidence at all that the intoxication caused any irregularities in the operation of the vehicle. If the former, then, notwithstanding the lip service paid to it, the concept of proximate causation has gone by the boards.
Classically, in the law of torts, it is substandard conduct in the performance or non-performance of an act which subjects the actor to liability for compensatory damages. If the conduct of an individual in operating an automobile is not otherwise substandard, evidence of intoxication on the part of that individual, in and of itself, logically cannot convert the conduct into a category which will permit recovery of punitive damages without totally emasculating the principle of proximate causation.
Without explicating it, the majority has today, at the very least, overruled the well-reasoned *927 decision in Carraway v. Revell, 116 So.2d 16 (Fla. 1959), in which it was held "`that the character of negligence necessary to sustain a conviction for manslaughter is the same as that required to sustain a recovery for punitive damages'". Carraway v. Revell, supra, at 20. In the earlier case of Miller v. State, 75 So.2d 312 (Fla. 1954), Mr. Justice Drew characterized the conduct necessary to sustain a conviction for manslaughter in the following terms:
"The culpable conduct necessary to sustain proof of manslaughter under Section 782.07, supra, `must be of "a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them."'" (pp. 313, 314)
The majority opines that Pettit may not rely upon cases decided under the culpable negligence manslaughter statute because of the higher burden of proof in a criminal action. It is submitted, however, that the only distinction between the two cases lies in the quantum of proof required for a conviction under the criminal statute. The character of conduct proscribed is the same in manslaughter actions as in tort actions seeking recovery of punitive damages. Cases under the manslaughter statute have consistently held that excessive speed alone, or some other single act of simple negligence, coupled with evidence of intoxication is not sufficient to constitute culpable negligence necessary for conviction. See Smith v. State, 65 So.2d 303 (Fla. 1953); Fowlkes v. State, 100 So.2d 826 (3d D.C.A.Fla. 1957); Jackson v. State, 100 So.2d 839 (1st D.C.A. Fla. 1958); Peel v. State, 291 So.2d 226 (1st D.C.A.Fla. 1974). In its opinion the majority has eliminated even the necessity for a single separate act of simple negligence where evidence of intoxication is present.
Another indication that the majority has gone astray appears in its statement:
"... We affirmatively hold that the voluntary act of driving `while intoxicated' evinces, without more, a sufficiently reckless attitude for a jury to be asked to provide an award of punitive damages if it determines liability exists for compensatory damages." (Emphasis supplied)
I suggest that the law of torts as it has been carefully developed over the years permits an award of punitive damages in personal injury cases involving vehicles where reckless conduct is involved, not reckless attitude. See Carraway v. Revell, supra.
The public policy arguments of the majority are enticing. There can be no question that drunk drivers endanger the lives of citizens of our state. But the Legislature can and has dealt with this problem through enactment of criminal statutes. The Legislature is the appropriate body to assert the public policy of Florida in this regard. That body having done so, it is unnecessary and improvident to cast aside a body of law which has evolved carefully through generations of legal thought and decisions. The majority in furtherance of a commendable social policy has thrown out the proverbial baby with the proverbial bath water.
I would discharge the writ of certiorari.
NOTES
[1] Ingram v. Pettit, 303 So.2d 703 (1st DCA Fla. 1974).
[2] Fla. Const. art. V, § 3(b)(3). The district court's decision is in direct conflict with Busser v. Sabatasso, 143 So.2d 532 (3d DCA Fla. 1962).
[3] Section 322.262(2)(c), Fla. Stat. (1973). This presumption applies "upon the trial of any civil ... action ... arising out of acts alleged to have been committed by any person while driving ... a vehicle while under the influence of alcoholic beverages ... to the extent that ... normal faculties were impaired."
[4] Focht v. Rabada, 217 Pa.Super. 35, 268 A.2d 157 (1970); Sebastian v. Wood, 246 Iowa 94, 66 N.W.2d 841 (Iowa 1954); Colligan v. Fera, 76 Misc.2d 22, 349 N.Y.S.2d 306 (Sup.Ct. 1973).
[5] See, Carraway v. Revell, 116 So.2d 16, 20 (Fla. 1959); State v. Smith, 65 So.2d 303 (Fla. 1953). Pettit also relies upon Frazee v. Gillespie, 98 Fla. 582, 124 So. 6 (1929), for the proposition that driving while intoxicated does not alone constitute negligence in Florida, much less gross negligence sufficient to justify punitive damages. Reliance on Frazee is not possible, however, as the Court was equally divided on the issue and made no decision. The debate begun in that case was resolved in Allen v. Hooper, 126 Fla. 458, 171 So. 513 (1937), where we held the violation of a traffic law to raise a rebuttable presumption of negligence. This principle was reaffirmed in Clark v. Sumner, 72 So.2d 375 (Fla. 1954).
[6] Florida Southern Ry. Co. v. Hirst, 30 Fla. 1, 11 So. 506, 513 (1892).
[7] See, Carraway v. Revell, 116 So.2d 16, 19-20 (Fla. 1959); Bridges v. Speer, 79 So.2d 679, 682 (Fla. 1955).
[8] Farrey v. Bettendorf, 96 So.2d 889, 895 (Fla. 1957).
[9] The most recent report of the Florida Department of Highway Safety and Motor Vehicles shows that in 1974 drinking was a contributing cause in 24,869 automotive accidents within Florida. Department of Highway Safety and Motor Vehicles, Traffic Accident Facts 3 (1975). The Florida Highway Patrol reports 570 deaths, and 18,703 injuries from the same cause for the same period. Florida Highway Patrol, Accident Records Section, Special Study Alcohol Involvement in Traffic Accidents 1972-74 (1975).
[10] The term "intoxication" is defined in Fla. Std.Jury Instr. in Crim.Cases, Manslaughter-DWI, 84 (1975), as follows:

"`Intoxication' means more than merely being under the influence of intoxicating liquor. As used in these charges, intoxication means that the defendant must have been so affected from the drinking of intoxicating liquor as to have lost or been deprived of the normal control of either his body or his mental faculties, or both. Intoxication is synonymous with `drunk.'"
[11] Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). See, Comment, The Dangerous Instrumentality Doctrine: Unique Automobile Law In Florida, 5 U.Fla.L.Rev. 412 (1952).
[12] The first drunk driving statute was enacted in 1915. Ch. 6882, Laws of Florida (1915). It provided that persons operating "an automobile in the State of Florida who are at the time intoxicated" are guilty of a misdemeanor, then punishable by a fine not to exceed $200 and/or imprisonment not exceeding 90 days. Section 3176a, Fla.Comp.Laws (1914). In 1923 the statute was expanded to prohibit driving any powered vehicle while intoxicated or under the influence of intoxicating liquor, and three categories of guilt were established. Mere drunk driving became punishable by a penalty ranging from $100 to $250 or imprisonment up to 60 days and license suspension for six months. If property damage or personal injury were caused, the penalty ranged from three to six months imprisonment with a $500 fine and one year license suspension. If a death occurred, the person was deemed guilty of manslaughter. Ch. 9269, Laws of Florida (1923).

In 1927 the non-financial penalty for drunk driving causing property damage or injury was increased to a range of three months to 12 months imprisonment. Ch. 11809, Laws of Florida (1927). In 1941, revocation of a driver's license became a mandatory administrative duty of the Department of Public Safety. Ch. 20451, Laws of Florida (1941). That duty exists today. Section 322.26, Fla. Stat. (1973).
In 1943, the minimum financial penalty for mere drunk driving was reduced to $25.00 and a series of harsher punishments were developed for habitual offenders. Ch. 22000, Laws of Florida (1943) (incorporating Section 317.20, Fla. Stat. (1941). In 1959, penalties were again increased. Chapter 59-94, Laws of Florida (1959). (Code revisions replaced Section 317.20 with Section 317.201, which now appears as Section 316.028, Fla. Stat. (1973).
In 1967 the Legislature conditioned the right to use public highways on consent to undergo tests for blood alcohol content upon demand of a police officer having reasonable grounds to believe the vehicle is being driven while under the influence of alcohol. It also declared that blood alcohol content of .10% raised a presumption that the person was under the influence of alcohol. Ch. 67-308, Laws of Florida (1967).
In 1971, the penalty for causing damage to property or personal injury while driving under the influence of alcohol was raised to a first degree misdemeanor, punishable by up to one year in county jail and a $1,000 fine. Ch. 71-136, Laws of Florida (1971) (incorporating the penalties appearing in Sections 775.082 and 775.083, Fla. Stat. (1971).
In 1974 the Legislature increased the penalties on subsequent offenders and made it illegal to drive with a blood alcohol level of .10% or more. This new crime is punishable by 90 days in jail and a $250 fine, with subsequent offenders subject to penalties as high as 12 months in jail and a $500 fine. Section 316.028, Fla. Stat. (Supp. 1974). Further, the law was amended to provide a minimum 30 days driver's license revocation for persons violating the amended Section 316.028, and to increase the period of revocation for driving under the influence of alcohol to a range of 90 days to one year. Section 322.28, Fla. Stat. (Supp. 1974). Section 322.281, Fla. Stat. (Supp. 1974), was also enacted both to deny courts the power to withhold adjudication of guilt in cases involving drinking drivers and to prohibit acceptance of guilty pleas to any lesser offense where blood alcohol content is.20% or more. Ch. 74-384, Laws of Florida (1974).
[13] Section 316.028(3), Fla. Stat. (Supp. 1974).