218 N.J. Super. 571 (1986)
528 A.2d 104
BRIAN P. MCMAHON, PLAINTIFF,
v.
PETER P. CHRYSSIKOS, DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
Decided October 3, 1986.
*572 George H. Conover, Jr. for plaintiff (Levinson, Conover, Axelrod, Wheaton & Grayzel, attorneys).
Salvatore P. DiFazio for defendant (Golden, Lintner, Rothschild, Spagnola & DiFazio, attorneys).
CONLEY, J.S.C.
This personal injury litigation arises from an automobile accident. The complaint seeks both compensatory and punitive damages. Defendant has moved for summary judgment on the punitive damage claim. The motion raises an issue upon which there are no reported opinions in this State, i.e., whether punitive damages are available in an automobile accident personal injury case where defendant driver was intoxicated.
It is undisputed that plaintiff's automobile was struck in the rear by an automobile operated by defendant. Plaintiff contends that the force of the impact was such as to propel plaintiff's vehicle onto nearby railroad tracks and that seconds after plaintiff was assisted out of his vehicle, it was destroyed by an oncoming train. Plaintiff further alleges that a blood sample taken of the defendant after the accident revealed a blood alcohol level of .22. One of two summonses issued to defendant was for drunk driving. For the purpose of this motion, it is assumed that defendant was intoxicated, that such intoxication was a causative factor in the accident and that defendant was negligent.
*573 To warrant a punitive damage award, there must be an intentional wrongdoing in the sense of an "evil-minded act". Alternatively, punitive damages may be warranted where the defendant's conduct arises from an act accompanied by a willful and wanton disregard of the rights of others. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49 (1984); DiGiovanni v. Pessel, 55 N.J. 188, 190 (1970); Berg v. Reaction Motors Div., 37 N.J. 396, 414 (1962). But this alternative basis for punitive damages must be something more than mere commission of a tort. There must be such a conscious and deliberate disregard for the safety of others that the defendant's conduct may be called willful or wanton. Nappe, 97 N.J. at 50; DiGiovanni, 55 N.J. at 190. Punitive damages have been characterized as "intentionally inflicting harm or acting in such a gross, wanton way, such a terrible way, so recklessly in disregard of what might happen to someone." Fischer v. Johns-Manville, 103 N.J. 643, 671 (1986). See also Enright v. Lubow, 202 N.J. Super. 58, 76 (App.Div. 1985).
The purpose of punitive damages, of course, is to serve as an expression of society's disapproval of outrageous or intolerable conduct. Such damages are "a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine". Fischer, 103 N.J. at 657, quoting from Cabakov v. Thatcher, 37 N.J. Super. 249, 259 (App.Div. 1955). While punitive damages are intended to punish the wrongdoer, they are also intended to deter both the wrongdoer and others from similar outrageous conduct in the future.
There can be little doubt that drunk driving is intolerable conduct. The enormity of the problem and the substantiality of harm inflicted by intoxicated drivers was graphically detailed in State v. Dively, 92 N.J. 573, 588-589 (1983). See also In re Kallen, 92 N.J. 14, 28-29 (1983); State v. Kirk, 202 N.J. Super. 28, 56-57 (App.Div. 1985). Concern for this social problem has manifested itself in judicial decisions, Kelly v. Gwinnell, 96 N.J. 538 (1984), as well as legislative actions, L. 1983, c. 444 and *574 L. 1983, c. 129, (amending the penalty provisions of N.J.S.A. 39:4-50); L. 1985, c. 97, L. 1984, c. 212, L. 1983, c. 39 (amending N.J.S.A. 2C:11-5 and increasing the potential criminal sentencing sanctions for death by auto offenses). It is an understatement to say that drunk driving conduct needs to be deterred.
It is this overriding concern for the problem and the need to deter that has prompted many state courts to allow punitive damages where a driver becomes intoxicated and thereafter is involved in an automobile accident. In Taylor v. Superior Court of Los Angeles County, 24 Cal.3d 890, 598 P.2d 854, 157 Cal. Rptr. 693 (Sup.Ct. 1979), for example, the intoxicated defendant driver had a prior history of alcoholism and DWI convictions coupled with a prior motor vehicle accident causally related to the defendant's intoxication. In addition, the defendant, in direct violation of a condition of probation, had obtained employment involving transportation of alcoholic beverages. Notwithstanding that punitive damages might well have been justified upon these particular circumstances since they substantially heightened the probability and foreseeability of further drunk driving and involvement in a motor vehicle accident, the Supreme Court of California held that such aggravating factors were not prerequisites to an award of punitive damages in drunk driving cases. It said:
There is a very commonly understood risk which attends every motor vehicle driver who is intoxicated... (citation omitted). One who wilfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others. The effect may be lethal whether or not the driver had a prior history of drunk driving incidents. [598 P.2d at 857, 157 Cal. Rptr. at 697.]
The justification for this conclusion was society's need to deter similar future conduct. 598 P.2d at 857-859, 157 Cal. Rptr. at 697-699. Thus, after detailing the statistical data correlating drunk driving with auto fatalities, the court said:
It is crystal clear to us that courts in the formulation of rules on damage assessment and in weighing the deterrent function must recognize the severe threat to the public safety which is imposed by the intoxicated driver. The *575 lesson is self-evident and widely understood. Drunken drivers are extremely dangerous people. [598 P.2d at 859, 157 Cal. Rptr. at 698.]
See also Peterson v. Superior Court, 31 Cal.3d 147, 642 P.2d 1305, 181 Cal. Rptr. 784 (Sup.Ct. 1982).
The majority of states that have considered whether punitive damages are warranted where an intoxicated defendant driver is involved in an accident have reached an affirmative conclusion. Some, like California, have done so based upon a finding that conduct consisting of voluntary intoxication and thereafter operation of an automobile on public roads per se warrants punitive damages. Arkansas  Holmes v. Hollingsworth, 234 Ark. 347, 352 S.W.2d 96 (Sup.Ct. 1961); Volger v. O'Neal, 226 Ark. 1007, 295 S.W.2d 629 (Sup.Ct. 1956); Hall v. Young, 218 Ark. 348, 236 S.W.2d 431 (Sup.Ct. 1951); Miller v. Blanton, 213 Ark. 246, 210 S.W.2d 293 (Sup.Ct. 1948); Ingersoll v. Mason, 254 F.2d 899 (8th Cir.1958); Dearing v. Ferrell, 165 F. Supp. 508 (D.Ct. 1958); Colorado  Butters v. Mince, 43 Colo. App. 89, 605 P.2d 922 (Ct.App. 1980); Florida  Ingram v. Pettit, 340 So.2d 922 (Sup.Ct.Fla. 1976); Alexander v. Alterman Transport Lines, 387 So.2d 422 (1st D.C.A.Fla. 1980); Georgia  Calloway v. Rossman, 150 Ga. App. 381, 257 S.E.2d 913 (Ct.App. 1979); Iowa  Sebastian v. Wood, 246 Iowa 94, 66 N.W.2d 841 (Sup.Ct. 1954); Minnesota  Anderson v. Amundson, 354 N.W.2d 895 (Ct.App.Minn. 1984); Hawkinson v. Geyer, 352 N.W.2d 784 (Ct. App.Minn. 1984); Montana  Allers v. Willis, 197 Mont. 499, 643 P.2d 592 (Sup.Ct. 1982); New York  Colligan v. Fera, 76 Misc.2d 22, 349 N.Y.S.2d 306 (Civ.Ct. 1973); Oregon  Harrell v. Ames, 265 Or. 183, 508 P.2d 211 (Sup.Ct. 1973); Dorn v. Wilmarth, 254 Or. 236, 458 P.2d 942 (Sup.Ct. 1969). In determining whether punitive damages are warranted, other states have evaluated the conduct of voluntary intoxication and driving coupled with other aggravating circumstances. Arizona  Smith v. Chapman, 115 Ariz. 211, 564 P.2d 900 (Sup.Ct. 1977); Connecticut  Infeld v. Sullivan, 151 Conn. 506, 199 A.2d 693 (Sup.Ct. 1964); Illinois  Madison v. Wigal, 18 Ill. App.2d 564, 153 N.E.2d 90 (App.Ct. 1958); Mississippi  Collins v. Black, 380 *576 So.2d 241 (Sup.Ct.Miss. 1980); New Mexico  Svejcara v. Whitman, 82 N.M. 739, 487 P.2d 167 (Ct.App. 1971); Ohio  Detling v. Chockley, 70 Ohio St.2d 134, 436 N.E.2d 208 (Sup.Ct. 1982); Richards v. Office Products Co., 55 Ohio App.2d 143, 380 N.E.2d 725 (1977); Pennsylvania  Focht v. Rabada, 217 Pa.Super. 35, 268 A.2d 157 (Sup.Ct. 1970); Tennessee  Pratt v. Duck, 28 Tenn. App. 502, 191 S.W.2d 562 (Sup.Ct. 1945); Texas  Higginbotham v. O'Keeffe, 340 S.W.2d 350 (Tex.Civ.App. 1960); Virginia  Eubank v. Spencer, 203 Va. 923, 128 S.E.2d 299 (Sup.Ct.App. 1962); Baker v. Marcus, 201 Va. 905, 114 S.E.2d 617 (Sup.Ct.App. 1960). Under both approaches, i.e. drunk driving per se or drunk driving coupled with other aggravating factors, punitive damages may be available in an automobile accident case. Only a few states have appeared to hold that punitive damages are not available in automobile accidents regardless of intoxication or any other circumstances. Giddings v. Zellan, 160 F.2d 585 (D.C. Cir.1947) (applying Maryland law). The latter approach arises in those states which do not permit punitive damages for willful and wanton misconduct, but which require proof of malice, fraud or evil intent. In Giddings, the court also concluded that prosecution under drunk driving statutes would be more effective than "inflammatory verdicts." Id. at 587. See generally, Annot., "Damages  Intoxication of Driver as Basis for Awarding Punitive Damages", 65 A.L.R.3d 656 (1975); "Punitive Damages", 8 Pepperdine L.Rev. 117 (1980).
As previously indicated, New Jersey does not limit punitive damages to proof of malice, fraud or evil intent. Neither does it preclude punitive damages where the wrongful conduct constitutes a criminal act. Nappe, supra, 97 N.J. at 51. However, whether intoxication per se may support an award for punitive damages is not clear. The alleged .22 blood alcohol content of defendant at the time of the accident is all that would support punitive damages in this case. In order to dispose of the motion, therefore, it must be determined whether *577 New Jersey would follow the per se rule or would require other aggravating circumstances.
Driving while intoxicated has been characterized as willful and wanton misconduct in this state. In Tabor v. O'Grady, 61 N.J. Super. 446, 455 (App.Div. 1960), the court said:
We are not to be understood as holding that drunkenness precludes a finding of recklessness or wanton misconduct. The actor's being in that condition ordinarily conduces to a finding of recklessness, as, for example, in drunken driving cases. The fact that one is driving while intoxicated is generally a culpable circumstance, not conclusive of liability but supportive of a finding thereof.... (cit. omitted). One explanation which has been given for this is that the actor's inability to perceive the risks of his reckless driving is due to his own previous reprehensible conduct in becoming intoxicated at a time when later driving was contemplated and the risk could have been foreseen. Because the actor is depriving himself of the ability to perceive or react to a foreseeable risk, the law imposes liability in part for the causal fault in becoming intoxicated ... (cit. omitted). In our view, however, the very act of operating a car should ordinarily import such consciousness of the risk involved if intoxicated as will preclude immunity from a charge of wantonness based upon the excuse of intoxication.
This apparent characterization of drunk driving as wanton misconduct is dicta. It concerns the concept of "comparative wantonness" of drunken passengers and primarily is intended to avoid any misunderstanding that drunkenness per se would preclude a finding of recklessness or wantonness because of the effect of alcohol upon one's mental state.
Recently, in McCarthy v. Ehrens, 212 N.J. Super. 249 (Law Div. 1986), the conduct of a drunk driver was considered willful and wanton. McCarthy involved a wrongful death action brought by the estate of a state trooper who was killed while investigating a drunk driver stalled on the highway. When the trooper arrived on the scene, the driver fled, erratically driving his vehicle on the shoulder with two flat tires and no headlights. The trooper gave chase, the drunk driver refused to stop until his automobile ultimately crashed into the center divider after suddenly veering across three lanes of traffic. While crossing the highway to render assistance, the trooper was hit by another car. In a motion for summary judgment, the defendant drunk driver sought to apply the "fireman's *578 rule" and thereby avoid liability. Noting that willful and wanton misconduct is not barred by the "fireman's rule", Entwistle v. Draves, 102 N.J. 559 (1986), the court denied the motion in part based upon its determination that the allegations of the drunk driver's conduct indicated that he "acted with reckless indifference to the consequences of his conduct" supporting a conclusion of willful and wanton misconduct.
Neither of these cases deals with the issue of punitive damages. Although both characterized drunk driving as willful and wanton misconduct, neither suggests that in an automobile accident litigation such conduct will per se support punitive damages.
The per se approach has been criticized as coming very close to imposing strict liability for punitive damages where intoxication is involved in an automobile accident. See Ingram v. Pettit, supra, 340 So.2d at 926 (Sudberg, J., dissenting). It has, moreover, been suggested that "mere intoxication" is no more than gross negligence and that, therefore, allowance of punitive damages where intoxication is the sole aggravating factor ignores the necessity for willful and wanton misconduct.[1]See Taylor v. Superior Court of Los Angeles County, supra, 598 P.2d at 865, 157 Cal. Rptr. at 705 (Clark, J., dissenting); Ingram v. Pettit, supra, 340 So.2d 926 (Sudberg, J., dissenting). And it is perhaps because it is difficult, if not impossible, to distinguish drunk driving from any other very negligent or grossly negligent conduct involved in a motor vehicle accident, that the court in Taylor could not cogently distinguish driving while intoxicated from a disregard of traffic signs or speed limit laws.
Thus, in Detling v. Chockley, supra, 436 N.E.2d at 211-212, the Ohio Supreme Court observed:

*579 Punitive damages may be imposed only after establishing the defendant's intoxication was the cause of the accident.... It would be possible for a drunken driver to commit a negligent act in such a manner as to not indicate intoxication. For example, a drunken driver could be well within the speed limit, drive a straight line and have a rear-end collision with a car stopped at an intersection. Rear-end collisions are very common and are mostly due to inattention, not intoxication. In such an instance, it is extremely unlikely one could get punitive damages, and it is arguable that one should not.
Allowance of punitive damages simply because a defendant was intoxicated at the time of the accident, without establishing causation and without demonstrating intention or deliberation through, at the least, aggravating circumstances, virtually would impose strict liability for intoxication in negligence actions. This would not be in concert with our well-developed jurisprudence of punitive damages, and we see no persuasive reason for taking such a step.
See also, Eubank v. Spencer, supra, 128 S.E.2d 299; Baker v. Marcus, supra, 114 S.E.2d 617.
Focusing upon the particular factual circumstances and not simply the defendant's intoxication is consistent with the recognition that negligence, albeit gross, is distinct from willful and wanton misconduct. In New Jersey that distinction is critical, for wantonness has always been considered different from negligence, even gross negligence. The difference is not merely in degree, but in kind. Staub v. Public Service Ry. Co., 97 N.J.L. 297, 300 (E. & A. 1922); Stern v. Abramson, 150 N.J. Super. 571, 574 (Law Div. 1977). Long ago in Staub it was held that in order to establish willful or wanton misconduct "it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produce the injurious result." 97 N.J.L. at 300 (emphasis supplied). See Berg v. Reaction Motors Div., supra, 37 N.J. at 414. Intoxication within the context of an automobile accident is gross and reprehensible. It should be deterred. However, without further aggravating factors, intoxication of a driver is different only in degree from the running of a stop sign.
*580 What additional factors would be sufficient to cross the line from gross negligence to willful and wantonness must be decided on a case-by-case basis.[2] In this rear-end collision case, the sole aggravating circumstance is alleged to be the .22 blood alcohol reading. Though this may be considered gross intoxication supporting a finding of gross negligence (assuming causation), it is no more. For these reasons, the motion for summary judgment is granted and the punitive damage count is dismissed.
NOTES
[1] Indeed, some of the states that have adopted the per se rule consider gross negligence to be willful and wanton misconduct. See Sebastian v. Wood, supra, 66 N.W.2d at 845; Colligan v. Fera, supra, 349 N.Y.S.2d at 309.
[2] Circumstances that might warrant punitive damages could include a substantial history of alcoholism, DWI conviction, prior automobile accidents while intoxicated coupled with voluntary employment entailing the transportation of alcohol. Taylor v. Superior Court of Los Angeles County, supra, 598 P.2d 854, 157 Cal. Rptr. 693. See Peterson v. Thompson, supra, 642 P.2d 1305, 181 Cal. Rptr. 784 (passenger requested intoxicated defendant to stop speeding, defendant thereafter had more to drink and continued speeding resulting in accident). See also, Focht v. Rabada, supra, 268 A.2d at 161, suggesting that punitive damages might be warranted where an intoxicated driver drove at an excessive speed down a thoroughfare crowded with many pedestrians.