846 So.2d 1257 (2003)
Sidney Alan ZUCKERMAN, Appellant,
v.
Stacey ROBINSON, Appellee.
No. 4D02-1346.
District Court of Appeal of Florida, Fourth District.
June 11, 2003.
H. Randal Brennan of Hendrix & Brennan, Vero Beach, for appellant.
Diego C. Asencio of Diego C. Asencio, P.A., North Palm Beach, for appellee.
FARMER, J.
We are asked to reverse a judgment for punitive damages on the grounds that the amount awarded exceeds the evidence as to defendant's financial resources. The record does in fact show that the sum well *1258 exceeds the ability to pay proved at trial. The issue is whether the basis for the awarddefendant injured plaintiff as a result of driving while intoxicatedauthorizes such financial castigation. With substantial misgivings, we hold it does not and reverse for further proceedings.
This case arose from a hit-and-run, rear-end collision. The record shows that defendant had a blood alcohol level above the legal limit, a fact that contributed both to the collision itself and plaintiff's injuries. The jury awarded $243,952 in compensatory damages, and the trial then turned to the issue of punitive damages.
The evidence as to defendant's financial worth was rather clear and not disputed. His testimony established that he had $4,500 in assets, consisting of a car, boat, furniture, clothing, and other personal property; he owns no real property, stocks, bank accounts or other assets, and has no available cash. Defendant also testified that his income in the previous year was little more than $2,600, from which he also paid child support. Plaintiff presented no evidence contradicting this showing of financial net worth.
Plaintiff adduced defendant's deposition in which he refused to admit any fault in causing the injuries from his intoxicated condition. In fact, defendant stated that he did not believe he deserved any punishment for what he did and that an award of punitive damages would have to exceed $200,000 "to get his attention."
In the end, the jury expressly found that he had a blood alcohol level above the lawful limit, that he was "driving while intoxicated" when he caused the accident, and that he "act[ed] in such a gross and flagrant manner at the time of the accident so as to show a reckless disregard of human life or the safety of persons exposed to the effects of his conduct." The jury assessed punitive damages of $250,000. The trial court denied defendant's motion for a remittitur and entered final judgment accordingly. Thence this appeal.
As a general matter, punitive damages may be assessed when the act in question was committed with malice, moral turpitude, wantonness, willfulness, outrageous aggravation, or in reckless indifference to another person's legal rights. Fla. East Coast Ry. Co. v. McRoberts, 111 Fla. 278, 149 So. 631 (1933). As at common law, punitive damages are premised on the enormity of the act resulting in the injury to the plaintiff, as where the act of private injury shares the attributes of a public wrong. Florida Southern Ry. Co. v. Hirst, 30 Fla. 1, 11 So. 506, 513 (1892); McRoberts, 149 So. at 635. Punitive damages, as the name implies, are awarded both as punishment to the defendant and as a warning to deter others from committing future acts of a similar nature. Campbell v. Gov't Employees Ins. Co., 306 So.2d 525 (Fla.1974). Such punishment is not a matter of right but lies in the discretion of the jury. It depends on the facts of each case. Ross v. Gore, 48 So.2d 412 (Fla.1950); Joab, Inc. v. Thrall, 245 So.2d 291 (Fla. 3d DCA 1971).
It came to be argued that intoxicated driving cases, by their very nature, ought to be categorically within the jury's authority to award punitive damages. In Ingram v. Pettit, 340 So.2d 922 (Fla.1976), the court confronted the issue "whether a jury should be allowed to consider an award of punitive damages where negligence is coupled with intoxication." Id. at 923. That case, like this one, involved a rear end collision by a motor vehicle being operated by a driver who was seriously under the influence of alcohol. In the civil claim, plaintiff also sought punitive damages. The trial judge, however, granted a summary judgment removing the issue of *1259 punitive damages from the jury, and the district court affirmed.
On discretionary review in the supreme court, plaintiff argued that:
"a jury should be allowed to consider an award of punitive damages, [and] that a person who voluntarily intoxicates himself and then drives an automobile on the public highways of this state should be exposed to financial punishment."
Id. at 923. In agreeing with this argument, the court explained:
"we hold that juries may award punitive damages where voluntary intoxication is involved in an automotive accident in Florida without regard to external proof of carelessness or abnormal driving, provided always the traditional elements for punitive liability are proved, including proximate causation and an underlying award of compensatory damages. We do not hold that intoxication coupled with negligence will always justify an award of punitive damages. We affirmatively hold that the voluntary act of driving "while intoxicated' evinces, without more, a sufficiently reckless attitude for a jury to be asked to provide an award of punitive damages if it determines liability exists for compensatory damages."
Id. at 924. The court justified its categorical decision thus:
"Today it is illegal to drive an automobile in the State of Florida if blood alcohol content is .10% Or more, regardless of proof as to the driver's carelessness.[1] Drinking to the point of intoxication is a voluntary act. Driving in an intoxicated condition is an intentional act which creates known risks to the public. We believe that the potentiality of an adverse award of punitive damages is a suitable corollary to those criminal laws designed to discourage this reckless disregard for the public safety." [footnote added]
Id. at 925. In short, the court recognized for the first time that injury claims caused by intoxicated drivers, by their very nature, qualify for punitive damages if the jury be so advised.
The contention that such punishment should be limited to the financial resources of the offending defendant was not addressed in Ingram. Nor had it been settled by preceding decisions. In Jones v. Greeley, 25 Fla. 629, 6 So. 448 (1889), the court had held in a defamation case that "the pecuniary circumstances of the defendant is a proper matter of evidence" as to the award of punitive damages. Id. at 449. From that point until the latter part of the 20th Century, the issue of financial worth centered around whether such evidence was admissible without addressing whether the financial worth of a defendant represented a maximum amount of punishment.
In Rinaldi v. Aaron, 314 So.2d 762 (Fla. 1975), the court was asked to answer a certified question inquiring whether, as a predicate for a claim for punitive damages, plaintiff is required to introduce evidence of defendant's financial worth and ability to pay such damages in order for the issue to be considered by the jury. The court held that:
"evidence of financial worth is admissible and may be considered by the jury in its determination of the amount to be awarded as punitive damages, but evidence of worth is not a requisite to such award. If defendant's financial worth is *1260 meager, it would be to his advantage to introduce such evidence in order to mitigate the damage award. As was stated by Sutherland in his Treatise on Damages, § 404 at 1315, `In cases where it is competent for the plaintiff to prove the wealth of the defendant to increase the damages, it is equally competent for the defendant to show a want of it to diminish them.'"
Id. at 765. Obviously, this is no clear holding of net worth as a limitation on punitive damages.[2]
The court did not make that decision until Arab Termite & Pest Control of Florida v. Jenkins, 409 So.2d 1039 (Fla.1982). There, the court explained:
"Since the defendant's financial position is proper for the jury to consider in imposing punitive damages, it must be considered along with the malice of the defendant's conduct in ruling on the question whether the jury's assessment is excessive in light of the manifest weight of the evidence. Punitive damages should be painful enough to provide some retribution and deterrence, but should not be allowed to destroy the defendant." [c.o.]
Id. at 1043; see also Joab, Inc. v. Thrall, 245 So.2d 291, 293 (Fla. 3d DCA 1971) ("In awarding punitive damages the jury may properly punish each wrongdoer by exacting from his pocketbook a sum of money which, according to his financial ability, will hurt, but not bankrupt."). Arab Termite establishes a judge-made limit on punitive damagesthat is, that such damages may not exceed the defendant's current ability to pay them. That leaves only the role of this limitation in the context of post trial motions and judicial review of such awards.
The issue presented by the motion for remittitur in this case required the court to assess whether the amount of punitive damages was within "the maximum limit of a reasonable range within which the jury may properly operate." See Bould v. Touchette, 349 So.2d 1181, 1186 (Fla.1977); and Lassiter v. Int'l Union of Operating Eng'rs, 349 So.2d 622, 627 (Fla.1977) ("The appellate court should not disturb a verdict as excessive, where the trial court refused to disturb the amount, unless the verdict is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate."). Reading Bould and Lassiter according to their terms, the rule seems to be that a trial judge ordinarily should disturb any award of punitive damages that "exceed[s] the maximum limit of a reasonable range within which the jury may properly operate." We know from Arab Termite that the reasonable range in which the jury may properly operate stops at the point where the amount would bankrupt the defendant.[3]
Thus, the cases hold that while the jury has broad discretion in fixing an amount of punitive damages, its discretion is limited by the current financial resources of the plaintiff. The amount of punitive damages may not be so large as to exceed the defendant's financial ability. Where the amount awarded exceeds defendant's *1261 financial abilitythat is, when it is greater than the "reasonable range within which the jury may properly operate"it is ipso facto an abuse of discretion for the trial judge to refuse a remittitur and corresponding right of new trial. Hence it was error for the trial judge to refuse a remittitur or new trial.
Although we are required to follow and apply the Arab Termite limitation, we think it is not improper to suggest that while there may be some reason to apply the rule against economic castigation in an individual case, it makes no sense to do so in this one. First is the obvious problem of financial truth seeking. In this case the evidence of financial worth comes entirely from the defendant, the person whose interest is paramount in minimizing the extent of the resources available. Under the present state of the law, it appears that the jury must accept the defendant's showing and reduce what might have otherwise been the sum awarded accordingly. But what if the jury does not believe defendant's protestations of poverty? What if plaintiff adduces contrary evidence? Should the jury be required to make specific findings as to defendant's financial worth? What if the trial judge disagrees with the jury's resolution of the financial worth issue? In none of the cases is it explained how this limitation is supposed to play out.
In this case defendant specifically admitted that any punitive damages would have to exceed $200,000 "to get his attention." In other words, he all but invited the jury to find that the amount of any civil punishment would have to be at least that large to serve the purposes for which such punishment was intended and assessed. Why should he be allowed to make such an admission, and then hide behind the economic castigation limiting rule?
Moreover, the Legislature has singled out DUI cases as uniquely qualified for punitive damages.[4] The effect of the statutes on punitive damages in DUI cases is to permit awards greatly exceeding any objective limit on the amount that may legally be awarded under current statutory law. Conspicuously, nothing in the statutes suggests an economic castigation limit on punitive damages or, if one should exist, that it would apply in DUI cases.
Under Florida law for the enforcement of judgments, the judgment creditor can levy on any assets of defendant but only to the extent that they are not exempt from such levy. For example, a fixed percent of the debtor's earned income from employment is protected from garnishment; the debtor's homestead is protected from levy and execution; and the debtor may exempt personal property up to $1,000 in value. Thus the judgment creditor may not take all that the debtor has. Yet so protected are judgments for punitive damages from driving while intoxicated that the debtor may not even use federal bankruptcy law and its purposes of providing a "fresh start" to avoid such damages.[5]
Punitive damages are nothing more than civil fines determined by juries instead of judges. They express a community's measurement of the enormity of specific malicious conductconduct that must necessarily be beyond civilized norms. In our criminal law, fines may be set in amounts exceeding the financial resources of defendant. When a convicted defendant is unable to pay, the fine is not reduced to his means but may instead be paid over time as he acquires assets or income. Thus, a defendant convicted of the felony crime of *1262 DUI is thereby subject to substantial fines, the amount of which may be well beyond his current means. The criminal DUI finebut not the civil onemay be hung over him like a Damoclean sword. He can be forced to make periodic payments on it as he earns the resources to do so, but the victim will never share in any of it.
It seems anomalous that the amount of society's outrage at malicious conduct violating both criminal and civil norms may be fixed by judgment in criminal cases, with compelled payment to await a judgment debtor's acquisition of resources to pay it, but not in civil cases. As this civil financial castigation limitation is judge-made, it should be eliminated by judges.
But the judges on this court are not authorized to do so. We follow Arab Termite but certify to the supreme court as a question of great public importance whether the economic castigation limitation on punitive damages should be eliminated entirely or at least amended in cases of injury caused by driving while intoxicated.
In this case, we reverse the trial court's denial of a remittitur and new trial, remanding for further proceedings.
GUNTHER and STONE, JJ., concur.
NOTES
[1] The only pertinent change in the statutory law relied on by the Ingram court is that now the offending level of blood alcohol has been lowered to .08. § 316.193(1)(b), Fla. Stat. (2002).
[2] Lehman v. Spencer Ladd's Inc., 182 So.2d 402 (Fla.1966), is not a necessary holding on the issue. In referring to "punishment of each wrongdoer by exacting from his pocketbook a sum of money which, according to his financial ability, will hurt, but not bankrupt," the court was venturing into dicta. Id. at 404.
[3] There are several locutions used to state this notion, e.g., "economic castigation," "bankrupt the defendant," "destroy the defendant" are all used. They all seem to state the same idea, that punitive damages should not exceed a defendant's present ability to pay them.
[4] See § 768.736, Fla. Stat. (2002).
[5] See 11 U.S.C. § 523(a)(9) (2002).