889 So.2d 952 (2004)
Joseph Allen SOUZA, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-244.
District Court of Appeal of Florida, Fifth District.
December 17, 2004.
*953 James B. Gibson, Public Defender, and Marvin F. Clegg, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Timothy D. Wilson, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
The issue presented by this appeal is whether the crime of DUI Manslaughter[1] is a qualifying enumerated offense under the Prison Releasee Reoffender Act.[2] We conclude that it is, and affirm.
The appellant, Joseph Allen Souza, who was convicted by a jury of DUI Manslaughter and other crimes not pertinent to this proceeding, appeals his judgment and sentence. Because the sole issue raised by his appeal concerns the applicability of the Prison Releasee Reoffender Act (the "PRR Act"), the facts surrounding Mr. Souza's conviction are not germane.
At the sentencing hearing the State sought to qualify Mr. Souza for sentencing under the PRR Act by demonstrating that Mr. Souza had been released from the custody of the Department of Corrections about two years before the commission of the crimes for which he was being sentenced, and that DUI Manslaughter qualifies as one of the crimes to which the PRR Act applies. The defense pointed out, however, that the specific crime enumerated in the PRR Act is "Manslaughter," and not "DUI Manslaughter," and argued that the statute, therefore, did not apply to this case. The trial judge considered the case of White v. State, 666 So.2d 895 (Fla.1996), which concerned the Habitual Felony Offender ("HFO") statute[3], and ruled that DUI Manslaughter is a qualifying offense, and sentenced Mr. Souza accordingly.
*954 Section 775.082(9)(a), the definitional section of the PRR Act, describes a prison releasee reoffender as follows:
(9)(a) 1. "Prison releasee reoffender" means any defendant who commits, or attempts to commit:
a. Treason;
b. Murder;
c. Manslaughter;
d. Sexual battery;
e. Carjacking;
f. Home-invasion robbery;
g. Robbery;
h. Arson;
i. Kidnapping;
j. Aggravated assault with a deadly weapon;
k. Aggravated battery;
l. Aggravated stalking;
m. Aircraft piracy;
n. Unlawful throwing, placing, or discharging of a destructive device or bomb;
o. Any felony that involves the use or threat of physical force or violence against an individual;
p. Armed burglary;
q. Burglary of a dwelling or burglary of an occupied structure; or
r. Any felony violation of s. 790.07, s. 800.04, s. 827.03, or s. 827.071;
within 3 years after being released from a state correctional facility operated by the Department of Corrections or a private vendor or within 3 years after being released from a correctional institution of another state, the District of Columbia, the United States, ... following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.
The PRR Act contains the following description of the legislative intent in enacting the statute:
It is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection, unless the state attorney determines that extenuating circumstances exist which preclude the just prosecution of the offender, including whether the victim recommends that the offender not be sentenced as provided in this subsection.
775.082(9)(d)1., Fla. Stat. (2002).
It is clear that the legislature intended by enacting the PRR Act to prevent persons released from prison from committing further serious crimes. See Ch. 97-239, Preamble, Laws of Florida; see also Fitzpatrick v. State, 868 So.2d 615, (Fla. 2d DCA 2004). The Florida Supreme Court, in Grant v. State, 770 So.2d 655, 661 (Fla.2000), reiterated that:
The Act's classification and increased punishment for prison releasee reoffenders is rationally related to the legitimate state interests of punishing recidivists more severely than first time offenders and protecting the public from repeat criminal offenders. Limiting the Act's application to releasees who commit one of the enumerated felonies within three years of prison release is not irrational.
Thus, if DUI Manslaughter is an enumerated offense, Mr. Souza clearly qualifies for treatment as a prison releasee reoffender. The statute, however, lists "manslaughter" as a qualifying offense, but does not specifically say that "DUI manslaughter" qualifies. Our task, accordingly, is to determine if the manslaughter designation is generic and covers DUI manslaughter within its definitional ambit.
DUI Manslaughter is defined in Section 316.193(3)(c)3, Florida Statutes (2002). *955 That statute provides that any person who operates a vehicle while under the unlawful influence of alcohol or certain chemical substances, as defined by the statute, and "by reason of such operation, causes or contributes to causing ... the death of any human being commits DUI manslaughter," punishable as either a second degree or first degree felony, depending on certain circumstances. Manslaughter, and a number of aggravated versions of manslaughter, are defined in section 782.07, Florida Statutes (2003). The essential crime of manslaughter is described by that statute, as follows:
"(1) The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, is manslaughter, a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."[4]
We have found no appellate decision in Florida, and none has been brought to our attention by the parties, that addresses the specific issue raised by this appeal. There is one case, however, that considered a similar issue. In White, the case primarily relied upon by the trial judge, the Florida Supreme Court considered whether a criminal defendant could qualify as an habitual violent felony offender ("HFO"), based on a prior conviction for causing the death of another while driving under the influence of alcohol. Briefly, section 775.084(1)(b)(1), Florida Statutes (1989), indicated that before an HFO sentence could be imposed, a defendant had to have been previously convicted of one or more of a number of felonies, including "manslaughter." The defendant in White had been convicted under the predecessor statute to section 316.193(3)(c)3, because while driving under the influence of alcohol, he struck and killed a bicyclist. The predecessor statute provided that a death caused by the operation of a motor vehicle by an intoxicated person constituted "manslaughter."
The defendant in White argued that because the other crimes listed as qualifying offenses in the HFO statute were crimes that were "especially" or "consciously" violent, a prior conviction for manslaughter involving culpable negligence could not be used as a predicate for an HFO designation. The Supreme Court, after examining the intention of the legislature in creating the HFO statute, disagreed, noting that "the legislature has provided for `manslaughter' as a qualifying offense without limitation." White, 666 So.2d at 896. The fact that DUI manslaughter did not have intent as an element was not determinative. "The inclusion of manslaughter was a legislative choice which, when plainly stated, offers little room for judicial gloss." Id. Thus, the court held that manslaughter caused while one is driving under the influence of alcohol is, indeed, a qualifying offense within the HFO statute.
While the DUI manslaughter statute has been renumbered and moved to a different *956 location in the statute books, White remains analogous to the present case. Intent is still not an element of either manslaughter or DUI manslaughter, and the major difference in the statute considered by the White court and the current relocated statute is the insertion of the letters "DUI" before manslaughter. We do not believe that the change of location and the insertion of the letters are significant.
Moreover, a number of the crimes listed in the PRR Act as qualifying offenses are described in their broadest sense. Murder, for example, is listed as one of the qualifying offenses. There are, of course, several degrees of murder and a number of different methods of committing that crime set forth in the statutes, yet the PRR Act does not differentiate, for example, between second and third degree murder. See § 782.04, Florida Statutes (2003). It simply says, murder. That the description of murder is generic does not prevent a defendant from being sentenced as a prison releasee reoffender for having committed that offense. See, e.g., Miller v. State, 772 So.2d 611 (Fla. 1st DCA 2000).
Thus, we are convinced that the most logical reading of the PRR Act is that DUI manslaughter is a variety of manslaughter, and that the legislature intended to include it within the ambit of the PRR Act. Accordingly, we affirm the judgment and sentence rendered by the trial court.
AFFIRMED.
SAWAYA, CJ., and PETERSON, J., concur.
NOTES
[1] § 316.193(3)(c)3, Florida Statutes (2002).
[2] § 775.082(9)(a), Florida Statutes (2002).
[3] § 775.084(1)(b)(1), Florida Statutes (1989).
[4] We note that in Ingram v. Pettit, 340 So.2d 922, 924 (Fla.1976), our Supreme Court, in holding that juries may award punitive damages where voluntary intoxication is involved in an automobile accident without external proof of carelessness or abnormal driving, held that the term "while intoxicated" means the same as it does in criminal proceedings. Of significance, the Court pointed out that punitive damages are reserved for instances involving the intentional infliction of harm, or recklessness that is the result of an intentional act, and that cases meeting this threshold "may be likened, in general terms, to culpable negligence in criminal proceedings." Id. See also Cannon v. State, 91 Fla. 214, 107 So. 360 (1926); Zuckerman v. Robinson, 846 So.2d 1257 (Fla. 4th DCA 2003).